**VANNEY v. ALASKA PACKERS ASS'N et al.**
No. A–4770.

United States District Court. D. Alaska.
Third Division. Anchorage.
April 7, 1949.

Davis & Renfrew, of Anchorage, and Carl J. Hutton, of Seward, for plaintiff.

Raymond E. Plummer, of Anchorage, for defendant.

DIMOND, District Judge.

The petitioner, Henry A. Vanney, then 62 years of age, on June 1, 1946, entered the employ of the Alaska Packers Association, a corporation, to work as cook's helper and in the care of employees' sleeping quarters, at the salmon cannery of the Association situated in the Bristol Bay area of Alaska. On July 7, 1946, in the performance of the duties of his employment, he suffered a personal injury by accident arising out of his employment, the injury being a hernia. By use of a truss which was available, he was able to continue in his employment and perform the duties thereof until the close of the salmon packing season in Alaska. He then returned to Seattle arriving there on September 18. The term of his employment ended on September 15.

The packing of salmon is a seasonal operation. In the Bristol Bay area, the actual taking of salmon is limited to a period of 30 days. But considerable work must be done in

preparation for packing and, at the close of the season, in shipment of the pack. When salmon are plentiful all in the industry work at top speed and for long hours. Compensation is made not only by minimum base rate pay but by overtime and a share or percentage of the pack.

The petitioner earned and was paid all of the sums agreed upon as wage compensation under his contract of employment as follows:

| | |
|---|---|
| June, 1946 | $ 341.00 |
| July, 1946 | 566.74 |
| August, 1946 | 364.56 |
| September 1 to 15, inclusive | 191.40 |
| Total | $1,463.70 |

It appears beyond dispute that the petitioner was employed at base rate compensation of $203.00 plus $30.00 for subsistence per month. The additional compensation was made up of overtime pay and a percentage of the pack. His wage compensation to some extent depended both upon overtime worked and upon the volume of the pack so that it could not be known in advance precisely what his total wage compensation would be.

Shortly after his arrival in Seattle he reported to his employer, or to his employer's insurer, and requested surgical relief for the injury which he so sustained. This request was made on September 20. However, no medical or surgical treatment was provided until October 8, when petitioner at the expense of the employer, or the insurer, was hospitalized and thereafter was operated upon, convalesced and made complete recovery. He was found able to resume work on January 1, 1947.

Question arose as to the amount of temporary disability compensation to which he was entitled under the Workman's Compensation Act of Alaska, hereinafter referred to as the Act. The insurer offered compensation for the period between October 9, and December 31, both inclusive, 1946, 65

percent of $233.00 per month, calculated upon his base pay of $203.00 plus $30.00 for subsistence per month, the total amount being $418.32. Petitioner refused to accept that amount as a settlement and demanded compensation for the period between September 20 and December 31, 1946, based upon his total earnings for the season, which would result in compensation in amount of $932.16, instead of $418.32 offered by the insurer. Accordingly petitioner claims balance due him of $513.84. Ultimately the petitioner accepted $418.32 offered by the insurer as applying upon his claim, without prejudice to his right to contest for the larger amount.

The petitioner declining to accept the sum of $418.32 as full disability compensation, he applied to the Alaska Industrial Board for an award. Two of the three members of the Board met on June 9, 1947, considered the case and made a decision, reading as follows:

"In Re: Henry Vanney vs. Alaska Packers, Claimant's Petition for Review, Mr. Boyle moved, Mr. Benson seconded: that the payment of $418.32 representing 65% of $203.00 monthly base pay plus $30.00 monthly subsistence is equitable and settlement on that basis is approved."

Thereafter and on October 2, 1947, petitioner filed with the Board his petition for review of the award. Upon consideration thereof, the Board, full membership being present, on October 6, 1947, affirmed the award made by its decision on June 9, 1947, in the following language:

"In re Henry Arthur Vanney vs. Alaska Packers Association, and Petition for Review-Full Board: The Board considered the Petition and the file in the case, and re-affirmed its decision made on June 9, 1947; the Petition, submitted on September 25, 1947 by Carl J. Hutton, attorney at Law, having failed to introduce new matter and being substantially a mere reiteration of the Petition brought by Attorney Roy E. Jackson on April 10, 1947, which was the basis for the Board's determination made on June 9, 1947."

Within thirty days thereafter the petitioner brought this proceeding for Court review of the Board's award.

It has been suggested that the petition did not make his application to the Board, for review by all members of the Board itself, within ten days from the date of the award of June 9, 1947. The record discloses that the petition for review by the entire Board was filed in the office of the Board on October 2, 1947. The statutory language relating to the subject is embraced in Section 16 of the Act, Section 43-3-16 of the Alaska Compiled Laws Annotated, hereinafter referred to as ACLA, reading as follows:

"If an application for review is made to the Industrial Board within ten days from the date of an award, made by less than all the members, the full Board, if the first hearing was not held before the full Board, shall review the evidence, or, if deemed advisable, hear the parties at issue and their representatives and witnesses as soon as practicable, and shall make an award and file the same with the findings of fact on which it is based, and shall send a copy thereof to each of the parties forthwith."

It is evident that the ten days period embraced in Section 16 is not a statute of limitations. Section 4 of the Act, 43-3-4, ACLA, provides for continuing jurisdiction of the Board as to all compensation cases, a jurisdiction that may be exercised at the instance of either party, or by the Board "upon its own motion". Moreover it is apparent from Section 16 that the ten days period prescribed therein runs from "the date of an award". The injured person might not even know of the award within ten days after the date thereof. The whole substance and tenor of the Act itself, and the fact that the period of ten days mentioned in Section 16 does not preclude the Board from thereafter reviewing the award at the instance of either party or upon its own motion, provided the Board chooses to undertake a review, show conclusively that the Board may act under Section 16 even if application for review by the entire Board is not made within 10

days from the date of the original award made by fewer than all of the members of the Board.

▮ The substantial question involved in this proceeding is as to the amount of the award and that question must be determined from the below-quoted provision of Section 1 of the Act, 43-3-1, ACLA:

"The average daily wage earning capacity of an injured employee in case of temporary disability shall be determined by his actual earnings if such actual earnings fairly and reasonably represent his daily wage earning capacity. If such earnings do not fairly and reasonably represent his daily wage earning capacity, the Industrial Board shall fix such daily wage earning capacity as shall be reasonable and have a due regard for the nature of his injury, the degree of temporary impairment, his usual employment and any other factor or circumstance in the case which may affect his capacity to earn wages in his temporary disabled condition."

What is meant by "the average daily wage earning capacity" of an injured employee, in case of temporary disability, having in view of the other provisions of the paragaph last above quoted? Many States in their Workman's Compensation Acts have made detailed and explicit provisions for calculating the daily or weekly or monthly average wages for various types of employment, including seasonal employment, but no such circumstantial statement is to be found in the Workman's Compensation Act of Alaska. Hence, the formulae outlined in the cases cited during argument are of little persuasive and no controlling authority. It seems evident that the provisions of the law quoted above give to the Board a wide discretion, to be soundly and justly exercised, in fixing the average daily wage earning capacity of the injured employee, and that the discretion is not limited to the wages currently being earned daily by the employee at the time he sustained the injuries. For example, it seems plain that if the petitioner in this case had been unable, by reason of his injury, to perform any work after July 9,

the date he sustained the injury, his disability compensation would rightly be calculated upon his full earning capacity for the season in his current employment, provided he was disabled for the entire remainder of the season.

The origin of the above-quoted provisions of our statute is not known. The legislative history of the Act discloses no information on the subject.

■ Under the law as written it appears to be the duty of the Board, in every such case, to determine the amount of wages or compensation the injured employee is capable of earning *and* of which he is or may be precluded from earning and receiving by reason of his injuries, and base the award on that result. Doubtless, evidence of the current and past wage earnings, including bonuses, percentages of product, and payments for overtime, as well as the commonly established or accepted standards of wages in the industry or occupation in which the injured employee has been engaged or which he may follow for a livelihood, are all factors that may be properly considered by the Board in making an award. But the ultimate test is, what has the employee lost in wages or compensation by reason of his injuries? That seems to be the standard which the law prescribes, and the standard with which the Board endeavored to comply.

■ Where the injured employee is steadily employed, the problem is easy of solution. His "average daily wage earning capacity", including overtime, bonuses and percentage of product, may be readily ascertained. In cases of occasional or seasonal employment, the question of law presented is more difficult to answer. Just as no one should be denied a fair award because, by reason of his injury, he may be unable to prove that he would inevitably have had remunerative employment during the period of his actual disability, so also, one temporarily or seasonally employed at wages above the scale which he was earning or is capable of earning during the remainder of the year may not justly claim disability compensation based on those seasonal or

temporary wages for a disability arising during such employment which does not really disable the employee until after the temporary or seasonal employment has been carried through to completion without any loss of wages therefor.

In this case the petitioner was able to carry on the usual duties of his employment and received full wage compensation for all of the term of his employment. Under that contract of employment he suffered no loss whatever. Nevertheless he was actually disabled and could not gain other employment until the injury had been remedied. The remedy was given and petitioner was cured between October 8 and December 31, 1946, so that on January 1, 1947, he was fully restored to health.

But we must remember that his employment by the Alaska Packers Association terminated on September 15, 1946, and he did not report for the medical and surgical treatment at the expense of his employer to which he was entitled by law until September 20, 1946. There is no proof or even suggestion that the petitioner, if uninjured, could have continued his employment for the defendant Association after September 15. In fact it is common knowledge that the salmon packing season was then over for the year and the petitioner could not again engage in the packing of salmon in Alaska before May 1, 1947.

The petitioner himself offered no proof as to what he had earned in any preceding year between September 20 and December 31, or of his opportunity, actual or potential, for earnings between September 20 and December 31, 1946. Nor did he offer any proof as to his earnings, daily, weekly or monthly before June 1946. The only evidence on the subject was provided by the defendant's insurer to the effect that the petitioner paid income tax upon gross income of $2,519.92 received between January 1 and September 15, 1946. This was not disputed. We know from all of the evidence that of his total income during the period mentioned, he

earned $1,463.70 between June 1 and September 15, 1946, and was paid that amount by the defendant Association, thus leaving a balance of $1,056.22 which he must have earned and received between January 1 and June 1, 1946, a period of five months, which, when broken down, would amount to $211.24 per month or. almost exactly $7.00 per day. Between June 1, and September 15, 1946, under his seasonal employment by the Association, his earnings averaged $418.20 per month or $13.67 per day.

The only reasonable conclusion at which one may arrive, in the absence of any other evidence on the subject, is that plaintiff's daily wages between September 20 and December 31, 1946, would probably not have exceeded the average of his earnings between January 1 and June 15, 1946. Accordingly, I find that the average wage earning capacity of the petitioner between September 20, and December 31, 1946, was not in excess of the amount agreed to by the Association's insurer and approved by the Board of $233.-00 per month, or $7.76 per day, and the award of the Board of Compensation for so much of that period as falls between October 9 and December 31, 1946, inclusive, is affirmed.

If the petitioner is entitled to any additional compensation based upon his anticipated or possible earnings between September 20 and December 31, 1946, he has had ample opportunity to so show. He was at all times represented by counsel. No such showing has been made or even suggested. Hence, under the law as herein construed, there is nothing in the record to impeach the validity of the Board's award of compensation for the period between September 20 and December 31, 1946.

The law provides that the petitioner is entitled to receive 65 percent of his average daily wages for the period of his disability. He has heretofore been paid compensation for the period commencing on October 9 and ending on December 31, 1946, in the total amount of $418.32. I find

that the disability continued from and including September 20, until and including October 8, 1946, and accordingly the petitioner is entitled to compensation for that period of 19 days, calculated at 65 percent of $7.76 per day. Such additional compensation amounts to $95.83. Additional award in that amount should be made by the Board, together with interest thereon at the rate of 8 percent per annum from October 8, 1946.