PIONEER CONSTRUCTION and Alaska
National Insurance Co., Appellants,

v.

Glenn CONLON and Alaska Workers'
Compensation Board, Appellees.

No. S–2848.

Supreme Court of Alaska.

Sept. 29, 1989.

Elise Rose and Mark L. Figura, Anchorage, for appellants.

Michael A. Stepovich, Fairbanks, for appellees.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

This appeal arises out of a decision by the Alaska Workers' Compensation Board (Board), awarding Glen Conlon ten weeks of temporary total disability (TTD), which

the employer did not pay, and an increase in his TTD benefit rate. Pioneer Construction and its workers' compensation carrier, Alaska National Insurance Company (collectively Pioneer), appealed the Board's decision to the superior court pursuant to AS 22.10.020(d). The superior court, sitting as an intermediate appellate court, affirmed the Board's decision. We reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Between 1981 and 1983, Conlon was employed as a line driver by Lynden Transport, hauling freight between Fairbanks and Prudhoe Bay. In 1983 Conlon started his own business, Rolling Hills Construction Company. Rolling Hills is an equipment intensive business primarily involved in heavy landscaping.

Conlon's primary source of income in 1984 was derived from Rolling Hills. However, in December 1984, he worked as a heavy equipment operator for Pioneer Construction. In 1985 Conlon had little income outside of that generated by Rolling Hills.[1]

During 1984 and 1985, Conlon was the primary operator of Rolling Hills' heavy equipment and did all of its equipment maintenance. His wife, Debra, did some bookkeeping and parts running both years. She was not paid for these services.

In 1985 Rolling Hills was awarded a contract to landscape 350 homes at Eielson Air Force Base. Conlon started work on the Eielson contract that year. In 1986 the contract was completed, and Conlon was paid.

After Rolling Hills shut down for the winter in 1985, Conlon took a job with Pioneer Construction. In January 1986 he was employed by Pioneer as a heavy equip-ment operator on the North Slope. Initially, this job was to last a few days but lasted in excess of one month. Conlon was injured on February 7 while operating a bulldozer for Pioneer.

The injury, initially diagnosed as muscle strain, was ultimately diagnosed as a herniated disc, which was surgically repaired.

After the injury Conlon was unable to operate heavy equipment or trucks. He was able to do little physical work, spending most of his time supervising Rolling Hills' employees. In order to complete the Eielson contract, Rolling Hills was forced to hire employees to do the work Conlon did prior to his injury. Conlon stated that had he not been injured he planned to hire only one additional employee for the Eielson contract in 1986. Instead, he hired at least four.

Pioneer's workers' compensation carrier started paying Conlon TTD benefits after his injury. However, it inadvertently based his compensation rate on his wife's earnings. The carrier also failed to pay compensation for various periods of time that Conlon had been released for modified work by Dr. Tewson.[2]

Conlon filed an application for adjustment of claim, seeking to have the proper compensation rate fixed and TTD benefits paid for periods it was withheld. A hearing was held before the Board in May 1987.

The Board found that Conlon was entitled to TTD based on his inability to operate heavy equipment or trucks. It also adjusted his compensation rate upward. This finding was based on the Board's calculation of Conlon's earnings in 1984 and 1985.[3] The Board calculated his earnings by adding the depreciation claimed as in-

---

1. In 1984 Conlon had net earnings of $3,788 from wages and $6,896 from Rolling Hills. In 1985 he had net earnings from wages of $245 and $13,920 from Rolling Hills.

2. Temporary total disability was not paid for the following time periods: February 15, 1986 through February 17, 1986; March 8, 1986 through March 30, 1986; April 8, 1986 through May 14, 1986; and June 15, 1986 through June 29, 1986.

3. The Board calculated Conlon's 1984 and 1985 earnings as follows:

| | |
|---|---|
| 1984 Net Earnings from Rolling Hills | $19,851 |
| Wages | $ 3,788 |
| 1985 Net Earnings from Rolling Hills | $33,953 |
| Wages | $ 245 |
| TOTAL: | $57,837 |

come tax deductions for 1984 and 1985 to Rolling Hills' net profit for those years. It also concluded that Conlon's 1986 Rolling Hills earnings were not "a fair reflection of his probable future earnings," observing that Rolling Hills' earnings were the result of a one time contract. Conlon was also awarded the statutory minimum attorney fees by the Board.

Pioneer appealed this decision to the superior court, which affirmed the Board. For the appeal, Conlon was awarded attorney fees in the amount of $2,917.50.

Pioneer appeals the superior court's affirmance of the Board's decision and its award of attorney fees for the appeal.

## II. DISCUSSION

### A. THE BOARD ERRED WHEN IT FOUND CONLON WAS ENTITLED TO AN INCREASE IN HIS TEMPORARY TOTAL DISABILITY BENEFITS.

Pioneer argues that the Board erred in granting Conlon TTD benefits. It asserts that the Board relied solely on medical evidence, ignoring Conlon's greater post-injury earnings in granting him TTD benefits. Pioneer argues that impaired earning capacity, not medical disability, provides the basis for finding a worker disabled. Reasoning that actual post-injury earnings are an indicator of earning capacity and because Conlon earned more after his injury, it concludes that he is not entitled to TTD benefits.

■ Pioneer correctly observes that workers' compensation disability is based primarily on an impairment in earning capacity. *Vetter v. Alaska Workmen's Compensation Bd.*, 524 P.2d 264, 266 (Alaska 1974). However, we need not decide whether Conlon's greater earnings after his injury preclude an award of TTD. Instead, we conclude that the Board erred in not treating this claim as one for temporary partial disability (TPD). TPD is awarded when the claimant is able to work but has suffered a decrease in wage earning capacity. AS 23.30.200; *see London v. Fairbanks Mun. Utils., Employers*

*Group*, 473 P.2d 639, 641–42 (Alaska 1970). Here, it is clear that Conlon had wage earning capacity after his injury; he supervised Rolling Hills' employees and functioned as its manager after the injury.

■ In determining Conlon's TPD benefits, the Board should keep in mind that it must reach a "fair approximation of a claimant's probable future earnings capacity during the period ... benefits are to be paid." *Deuser v. State*, 697 P.2d 647, 649 (Alaska 1985) (citation omitted). However, earning capacity and post-injury earnings are not synonymous. 2 A. Larson, *The Law of Workmen's Compensation* § 57.21, 10–91 to 10–92 (1986). Actual post-injury earnings raise a presumption of actual earning capacity; the presumption may be rebutted with "evidence showing that they are an unreliable indicator of earnings capacity." *Hewing v. Peter Kiewit & Sons*, 586 P.2d 182, 186 (Alaska 1978) (citations omitted); Larson, § 57.21(d) at 10–113 to 10–125. Actual post-injury earnings may be an unreliable indicator of earning capacity, especially where they are of a temporary or unpredictable character. Larson, § 57.21(d) at 10–126.

On remand, the Board is instructed to take evidence with respect to the value of Conlon's management skills. Evidence should also be taken with respect to the cost Conlon incurred in performing the contract due to the additional employees he was forced to hire in order to complete the contract after his injury. Conlon is entitled to an offset for this cost.

### B. THE BOARD TREATED CONLON'S DEPRECIATION DEDUCTION REASONABLY WHEN IT CALCULATED HIS SPENDABLE WEEKLY WAGE.

Pioneer makes two arguments regarding the Board's treatment of depreciation and Conlon's self-employment income. First, it argues that the Board's decision in *Gurth v. Cummins Masonry*, No. 82–0292 (Alaska Worker's Comp. Board Dec. 19, 1982) is

**998**

erroneous and internally inconsistent.[4] Second, it argues that the *Gurth* decision is contrary to AS 23.30.265(15).[5]

The thrust of Pioneer's argument is that the Board's decision in *Gurth* attempts to calculate the claimant's self-employment gross wages by reducing them by all out-of-pocket expenses. It contends that depreciation reflects the out-of-pocket expense of capital asset acquisition.[6] By removing depreciation from the calculation, Pioneer concludes that the Board fails to account for the out-of-pocket expenses associated with capital asset acquisition.[7]

Review of this issue presents a question of law, involving agency expertise. When a question of law implicates agency expertise, we utilize a reasonable basis standard of review. *Rose v. Commercial Fisheries Entry Comm'n*, 647 P.2d 154, 161 (Alaska 1982). Agency expertise and fundamental policy appear to be implicated in the Board's treatment of depreciation in self-employment cases.

The Board has considerable discretion when determining the claimant's wage earning capacity. AS 23.30.210;[8] *Vanney v. Alaska Packers Ass'n*, 12 Alaska 284, 290 (1949) (interpreting predecessor to AS 23.30.210 with similar language). Broad

discretion is also granted the Board in determining the claimant's spendable weekly wage under AS 23.30.220(a)(2). *Phillips v. Nabors Alaska Drilling, Inc.*, 740 P.2d 457, 460 n. 7 (Alaska 1987). Given the Board's broad discretion in this area, we believe the Board's treatment of depreciation is reasonable.

Depreciation is not an out-of-pocket expense. It is a device to account for the "exhaustion, wear, and tear (including a reasonable allowance for obsolescence) ... of property used in a trade or business." 26 U.S.C. § 167(a). The total depreciation deduction on an asset may exceed its actual resale value. Therefore, the amount deducted for depreciation of an asset may represent an amount greater than the true out-of-pocket expense associated with the exhaustion, wear and tear of the asset.

The Board's approach under *Gurth* is not unreasonable. If the Board's calculations were to reflect the out-of-pocket expense component of the depreciation deduction with certainty, they would have to account for the amount that actually reflects exhaustion, wear and tear of the asset and the amount that was in excess of exhaustion, wear and tear. This would complicate the Board's determination of self-employment income, undermining the Workers'

---

4. Under its methodology, the Board calculates the self-employment wage in one of two ways, each yielding the same result. In this case, the Board subtracted depreciation from the other deductions in Schedule C of Conlon's federal tax return. The resulting amount is then subtracted from gross profits. The second method, followed in *Gurth*, subtracts all deductions listed on Schedule C, including depreciation, from gross profits and then adds depreciation to the resulting amount. Either method increases the claimant's self-employment earnings.

5. Former AS 23.30.265(15) defines gross earnings as follows:
"gross earnings" means periodic payments, by an employer or an employee for employment before any authorized or lawfully required deduction or withholding of money by the employer, including compensation that is deferred at the option of the employee, *and excluding* irregular bonuses, reimbursement of expenses, expense allowances, *and any benefit or payment to the employee that is not taxable to the employee during the pay period;* the value of room and board to the employee may be considered in determining gross earn-

ings; however, the value of room and board that would raise an employee's gross weekly earning above the Alaska average weekly wage at the time of injury may not be considered[.]
(Emphasis added). This section was amended in 1988. Ch. 79 §§ 41, 43 and 44 SLA 1988.

6. Mr. David Owen, Conlon's CPA, testified that the depreciation deduction did not represent an out-of-pocket expense. Pioneer's CPA, Ms. Lauretta Poxleitner, testified that depreciation was a calculation reflective of the use of equipment.

7. Deductible expenses incurred in running a business fall into two categories for income tax purposes. 26 U.S.C. §§ 162–167 (1982 & Supp. V 1987). Certain business expenses such as wages or rents are deductible in the year they are incurred. 26 U.S.C. § 162. Property used in a trade or business is generally depreciated over a period of time that varies with the property involved. 26 U.S.C. § 167.

8. AS 23.30.210 was repealed in 1988. Ch. 79 § 44 SLA 1988.

Compensation Act's purpose of "provi[ding] ... financial and medical benefits for victims of work-connected injuries in the most efficient, most dignified, and most certain form." *Providence Washington Ins. Co. v. Grant*, 693 P.2d 872, 876 n. 8 (Alaska 1985).

Pioneer contends that depreciation is a benefit or payment that is not taxable; thus, it concludes depreciation should be excluded from "gross earnings." However, the Board's approach in *Gurth* does not ignore the plain language of former AS 23.30.265(15), defining gross earnings. *See supra* note 5.

Depreciation deductions are not a benefit or payment paid to the self-employed claimant. They are a deduction allowed to a businessman reflecting the use of a capital asset. 26 U.S.C. § 167. Conlon's CPA, Mr. David Owen, testified that depreciation was not a device to provide cash for a business and that it was not earned income but was a tax deduction. Thus, we believe the Board's treatment of depreciation is reasonable and within its discretion.

## C. THE BOARD USED THE WRONG SOCIAL SECURITY TAX DEDUCTION WHEN IT CALCULATED CONLON'S SPENDABLE WEEKLY WAGE.

Pioneer argues that the Board, in relying on the Alaska Workers' Compensation Manual's Compensation Rate Tables, incorrectly computed Conlon's compensation rate. As Pioneer points out the rate tables utilize the 7.5% social security tax deduction for non-self-employed workers, which is inappropriate here because most of Conlon's income was derived from self-employment. It concludes that AS 23.30.220, AS 23.30.265(15), (16) and (22) compel the Board to utilize the higher self-employed social security tax rate for cases involving self-employed claimants.

Conlon responds that this issue was not properly preserved for appeal, arguing that Pioneer did not raise this issue until it filed its opening brief in the superior court. Although we generally do not review a claim of error if it is not properly presented to

this court, we will review it if it constitutes plain error. *See In re L.A.M.*, 727 P.2d 1057, 1059 (Alaska 1986). Plain error is an error so substantial as to result in an injustice. *Merrill v. Faltin*, 430 P.2d 913, 917 (Alaska 1967).

■ We conclude that the Board's error here resulted in an injustice. AS 23.30.-220(a) defines spendable weekly wage as the gross weekly earnings minus payroll tax deductions. Payroll tax deductions include amounts "that ... would be ... withheld as of the January 1 preceding the injury under the Social Security Act of 1935 as amended." AS 23.30.265(23)(B). For self-employment the rate as of January 1, 1986 was 11.4%. 26 U.S.C. § 1401(a). Clearly, most of Conlon's income was derived from self-employment and that rate should have been used to compute his compensation rate. Thus, the Board's reliance on the wrong social security tax rate was so "substantial as to result in an injustice." *Merrill*, 430 P.2d at 917.

## D. THE BOARD ERRED WHEN IT DID NOT ATTRIBUTE ANY OF ROLLING HILLS' 1986 INCOME TO CONLON'S WIFE.

■ Pioneer argues that the Board erred by failing to attribute any of Rolling Hills' income to Conlon's wife, Debra, or at least adjust the amount attributed to Conlon downward to reflect the services she provided to Rolling Hills. The Board's failure to address this issue, Pioneer concludes, requires remand of this issue to the Board.

Conlon argues that the issue also was not properly before the Board. He asserts that the issue was only briefly alluded to during his deposition, in Pioneer's hearing memorandum, and in its closing argument. He asserts that it was not included in the Board's pre-hearing summary. We conclude the issue was properly before the Board.

In his deposition, Conlon stated that Debra provided services to Rolling Hills; she went for parts and materials and kept its

books without pay.[9] In its hearing memorandum, Pioneer asked the Board to adjust Conlon's income to reflect at least the value of the services provided by Debra to Rolling Hills. In its closing argument to the Board, Pioneer argued that Debra's services must be considered by it. Although the pre-hearing summary did not expressly address this issue, it did provide information about Conlon's self-employment earnings. It also noted that there was confusion surrounding Conlon's 1984 income. Taken together we conclude that the issue was properly presented to the Board.

Further, this issue was properly raised on appeal. Although Pioneer's statement of points on appeal is somewhat vague, it asserted that the Board erred by ignoring out-of-pocket costs in calculating the employees spendable weekly wage. In its closing argument, Pioneer argued that Debra's services were a cost of business the Board must consider.

The Board should have reduced Conlon's self-employment earnings to reflect the value of Debra's services to Rolling Hills. Her services were an out-of-pocket business cost, which Conlon would have had to

pay had his wife not gratuitously provided them. Thus, both his self-employment earnings and his benefits did not reflect his true earnings. As we are remanding this case to the Board, we instruct it to take evidence on this point when it redetermines Conlon's benefits.

## E. THE SUPERIOR COURT ERRED BY NOT EXPLAINING ITS AWARD TO CONLON OF EXCESS ATTORNEY FEES.

 Pioneer argues that the attorney fees awarded to Conlon for the appeal by the superior court should be vacated.[10] It argues that the superior court abused its discretion by awarding Conlon more than the "actual" amount of fees claimed for the appeal and not explaining its award. Conlon calculated his fees at $2,431.25 and asked for a multiplier of 2. In awarding Conlon attorney fees, the superior court merely stated that Pioneer was to pay Conlon $2,917.50 in attorney fees for the appeal.

In workers' compensation cases, awards of attorney fees are controlled by AS 23.-30.145.[11] *Providence Washington,* 693

9. Debra Conlon apparently kept the Rolling Hills books with the aid of a bookkeeper in 1984. In 1985 she kept the books without any assistance.

10. Conlon was represented by different counsel before the Board and the superior court. Although Conlon's prior counsel opposed Pioneer's motion to supplement its statement of points on appeal to include this issue, his prior counsel declined our invitation to move to intervene or file a brief on this issue.

11. AS 23.30.145 provides:

(a) Fees for legal services rendered in respect to a claim are not valid unless approved by the board, and the fees may not be less than 25 per cent on the first $1,000 of compensation or part of the first $1,000 of compensation, and 10 per cent of all sums in excess of $1,000 of compensation. When the board advises that a claim has been controverted, in whole or in part, the board may direct that the fees for legal services be paid by the employer or carrier in addition to compensation awarded; the fees may be allowed only on the amount of compensation controverted and awarded. When the board advises that a claim has not been controverted, but further advises that bona fide legal

services have been rendered in respect to the claim, then the board shall direct the payment of the fees out of the compensation awarded. In determining the amount of fees the board shall take into consideration the nature, length and complexity of the services performed, transportation charges, and the benefits resulting from the services to the compensation beneficiaries.

(b) If an employer fails to file timely notice of controversy or fails to pay compensation or medical and related benefits within 15 days after it becomes due or otherwise resists the payment of compensation or medical and related benefits and if the claimant has employed an attorney in the successful prosecution of the claim, the board shall make an award to reimburse the claimant for the costs in the proceedings, including a reasonable attorney fee. The award is in addition to the compensation or medical and related benefits ordered.

(c) If proceedings are had for review of a compensation or medical and related benefits order before a court, the court may allow or increase an attorney's fees. The fees are in addition to compensation or medical and related benefits ordered and shall be paid as the court may direct.

P.2d at 879. For workers' compensation appeals, we have approved attorney fee awards in excess of the fee that the attorney would have earned had he been employed on an hourly basis. *Wise Mechanical Contractors v. Bignell,* 718 P.2d 971, 972–73 (Alaska 1986). The rationale for allowing excess fees is to assure competent counsel for worker's compensation claimants. *Id.* at 975.

Pioneer argues by analogy to Civil Rule 82 that the trial court must explain its award of excess attorney fees. As Pioneer points out, in *Mullen v. Christiansen,* 642 P.2d 1345, 1351 (Alaska 1982), we observed that the trial court must state its reasons for awarding attorney fees in excess of those in the Civil Rule 82(a) schedule. In *Stordahl v. Government Employees Insurance Co.,* 564 P.2d 63, 68 (Alaska 1977), we held that the trial court must state its reasons for denying a prevailing party attorney fees. These cases establish that when the trial court departs from the norms established by Civil Rule 82, it must explain its reasons.

As there is no explicit norm for awards under AS 23.30.145(c), it is important that the court explain its reasons for decision. Such an explanation serves the same purpose as findings in general. Appellate review is facilitated by demonstrating what factors were considered, careful decision making is promoted, and the parties are aided in their determination as to whether to appeal. *See Southeast Alaska Conservation Council v. State,* 665 P.2d 544, 549 (Alaska 1983).

Based on the foregoing, we conclude that the trial court should explain its reasons for making an award of attorney fees for workers' compensation appeals. Thus, the award of attorney fees is vacated and remanded to the trial court for a redetermination consistent with this opinion.[12]

### III. CONCLUSION

The decision of the Superior Court is REVERSED. The Superior Court is ordered to REMAND this case to the Board with directions to VACATE the award to Conlon of benefits and attorney fees and redetermine each in a manner consistent with this opinion.

---

**12.** Pioneer raised several other arguments in connection with this issue. Due to our resolution of this issue, we need not address those arguments.