GOSINK, Appellant,

v.

HAMM, Appellee.

[Cite as *Gosink v. Hamm* (1996), 111 Ohio App.3d 495.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–950563.

Decided June 26, 1996.

*Hardin & Hill* and *David H. Lefton,* for appellant.

*Bruce C. Hamm, pro se.*[1]

---

1.  John Overman filed an appellate brief on behalf of appellee, but was subsequently disbarred by order of the Ohio Supreme Court on February 22, 1996, prior to oral argument.  See *Dayton Bar Assn. v. Overman* (1996), 75 Ohio St.3d 48, 661 N.E.2d 701.  Appellee and appellant agreed to have the case submitted on the briefs.

HILDEBRANDT, Judge.

Appellant Julie Gosink raises one assignment of error in her timely appeal, asserting that the trial court abused its discretion in granting appellee Bruce Hamm's Civ.R. 60(B) motion concerning the paternity of her son. The record demonstrates that in 1992 appellee appeared before the court, admitted paternity of the child, and waived his right to counsel and genetic tests. In 1995 appellee filed a Civ.R. 60(B) motion requesting genetic testing to determine whether he was the biological father of appellant's child. The trial court ordered the testing, granted appellee's motion, and set aside his support obligation when the test results excluded appellee as the child's father. In its entry the trial court specifically stated:

"Under Civil Rule 60(B) this relief may be granted where 'it is no longer equitable that the judgment should have prospective application.'"

This language clearly indicates that the trial court granted appellee's motion pursuant to Civ.R. 60(B)(4).

Appellee's Civ.R. 60(B) motion, however, cannot be brought under this less specific provision of Civ.R. 60(B) where a more specific provision applies. See *Caruso–Ciresi, Inc. v. Lohman* (1983), 5 Ohio St.3d 64, 66, 5 OBR 120, 121–122, 448 N.E.2d 1365, 1367. Pursuant to *Strack v. Pelton* (1994), 70 Ohio St.3d 172, 637 N.E.2d 914, appellee's motion falls more appropriately under Civ.R. 60(B)(2), as his motion is obviously premised on the results of the genetic tests, *i.e.*, evidence newly discovered.

Thus, because appellee failed to file his motion for relief within the one-year time limit required for newly discovered evidence, he cannot prevail on his motion. See *GTE Automatic Elec., Inc. v. ARC Industries, Inc.* (1976), 47 Ohio St.2d 146, 1 O.O.3d 86, 351 N.E.2d 113. Although this decision causes us concern and is illogical in light of the scientific determination that appellee is not the biological father, we are compelled to follow the doctrine of *stare decisis* and must reverse the trial court's judgment on the authority of *Strack v. Pelton, supra.*

Therefore, the judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion and law, including the issue of child support.

*Judgment reversed*
*and cause remanded.*

MARIANNA BROWN BETTMAN, P.J., concurs.

SUNDERMANN, J., dissents.

MARIANNA BROWN BETTMAN, Presiding Judge, concurring.

This case presents another example of the difficulties of balancing all the equities in paternity cases. On July 19, 1990, plaintiff-appellant, Julie Gosink, gave birth to a son. In December 1991, Gosink filed an action in juvenile court to establish a father/child relationship between this child and defendant-appellee, Bruce Hamm. Hamm appeared in court on February 18, 1992, and was advised by the referee of his right to counsel. The matter was continued until March 24, 1992, so that Hamm could obtain counsel. Hamm reappeared in court on March 24. He was unrepresented. He was once again advised of his right to counsel and was advised of his right to a genetic test.[2] Hamm admitted to the existence of a father/child relationship without taking a blood test, signed the report of the referee acknowledging paternity, and filed no objection to the report of the referee establishing paternity. On March 25, 1992, the report of the referee establishing Hamm as the father of this child was approved and entered as the court's order. Hamm was ordered to pay support, which he did for nearly three years.

On January 20, 1995, Hamm filed a motion captioned "60(B)," which read:

"I Bruce C. Hamm would like to have a DNA blood test done to see if [the child previously determined to be my son] is my son or not. And if not I would like the support case to be dropped."

On March 17, 1995, Hamm and Gosink appeared before the juvenile court judge. Hamm was again unrepresented. Hamm stated that he believed he had been accused falsely of being the father of the child, and that, while he had not wanted a blood test when he admitted to being the father, he now did. The reason he gave for waiting so long to request a blood test was that he had been unable to pay for the test until that time because Gosink had left him with many bills when the two ended their relationship.

Over Gosink's objection, the trial court allowed Hamm to take the blood test and ordered Gosink to do the same. The test results excluded Hamm as the child's biological father. As a result, again over Gosink's objection, the court held that Hamm was entitled to relief pursuant to Civ.R. 60(B)(4), which allows for relief from judgment where it is no longer equitable to grant prospective

---

2. While the transcripts of these hearings are not a part of this appeal, I assume that before allowing a putative father to proceed in a paternity action without counsel, the court advises the putative father in the strongest possible terms of the ramifications and consequences of an adjudication of paternity.

application to a judgment. Accordingly, child support was terminated prospectively.

If we consider nothing but the test results, and consider only Hamm's interest, the court's decision certainly seems fair. But there is far more involved here than that.[3] I believe that the lower court failed to determine either the appropriateness or the timeliness of Hamm's attempt to reopen the issue of paternity three years after the matter had been decided by court order. I agree with the lead opinion that Supreme Court precedent compels the reversal of this case, and this court so held recently in *Boyd v. Sanders* (Apr. 10, 1996), Hamilton App. No. C–950355, unreported, 1996 WL 164104. I also agree with the dissent that there is unfairness here. However, I write separately to ensure that the lower courts follow proper procedure in the future so that the present situation does not arise again. The Supreme Court of Ohio has provided guidance in this field which I believe the trial court failed to follow.

Although *In re Gilbraith* (1987), 32 Ohio St.3d 127, 512 N.E.2d 956, deals with the determination of parentage in dissolution actions and legitimation proceedings, the court's reasoning is highly instructive. In *Gilbraith,* the court held that no part of R.C. Chapter 3111, Ohio's parentage laws, eliminates the doctrine of *res judicata* from parentage actions. The court observed that while an extrajudicial agreement about parentage cannot be used to stop a subsequent parentage action, a final *judicial* resolution of the rights and obligations of the parties, *whether consensual or adversarial,* will serve as a bar to relitigating the issue.

In *Collett v. Cogar* (1988), 35 Ohio St.3d 114, 518 N.E.2d 1202, which follows and cites *Gilbraith* with approval, paternity was established through an acknowledgment which was never reduced to judgment or made an order of any court. In allowing a subsequent paternity action to be brought under R.C. Chapter 3111, the court made a distinction between paternity cases in which there was no court order or judgment and those in which there was, holding that in the latter category, where paternity was established by order of the court or reduced to judgment, principles of *res judicata* applied and no further action under R.C. Chapter 3111 could be brought.

In this case, just such a judicial resolution occurred on March 25, 1992. Thus, unless Hamm could demonstrate some cognizable basis for relief from judgment, the issue of paternity was finally adjudicated and closed on March 25, 1992.

---

**3.** There are significant interests other than those of the putative father involved. As this court pointed out in *Broxterman v. Broxterman* (1995), 101 Ohio App.3d 661, 656 N.E.2d 394, there are others with highly important rights and interests in a paternity action, most particularly the child and the state.

Relief from judgment is allowed under Civ.R. 60(B) when the moving party claims to have a meritorious defense, when the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5)[4] and when the motion is made within a reasonable time. *GTE Automatic Elec., Inc. v. ARC Industries, Inc.* (1976), 47 Ohio St.2d 146, 1 O.O.3d 86, 351 N.E.2d 113, paragraph two of the syllabus. For motions made pursuant to Civ.R. 60(B)(1), (2), or (3), there is an absolute outer limit of one year from judgment in which to seek relief from judgment.[5] For motions brought under Civ.R. 60(B)(4) and (5), there is no specific statute of limitations, only a rule of reasonableness. These basic principles of relief from judgment were specifically applied to paternity actions by the Supreme Court in *Strack v. Pelton* (1994), 70 Ohio St.3d 172, 637 N.E.2d 914.

In *Strack,* the court held that in cases involving determinations of parentage, visitation and support of a minor child, finality is the most compelling and overriding consideration. *Id.* at 175, 637 N.E.2d at 917; see, also, *In re Gilbraith, supra,* 32 Ohio St.3d at 131, 512 N.E.2d at 961 ("where the matter of parentage is determined with finality * * * the policy of this state requires, in sum, that the parent-child relationship be shielded from the unsettling effects of further judicial inquiry * * *").

While *Strack* does not say that the issue of paternity may never be reopened, the court makes clear that a man adjudicated the father of a child may not use the more lenient statute of limitations found in Civ.R. 60(B)(4) or (5) to set aside a judgment of paternity if one of the stricter provisions of Civ.R. 60(B)(1), (2) or (3) applies. This holding follows Supreme Court precedent in other areas of law. See *Caruso–Ciresi, Inc. v. Lohman* (1983), 5 Ohio St.3d 64, 5 OBR 120, 448 N.E.2d 1365. In other words, if the reason for trying to reopen an adjudication of paternity falls under Civ.R. 60(B)(1), (2) or (3), there is *at the latest* a one-year statute of limitations to file the motion and a party *cannot* rely on the catchall provisions of Civ.R. 60(B)(4) or (5) to file a motion more than a year after judgment. I do not believe that the dissenting opinion addresses this point, which we, as an intermediate court, are obliged to follow.

---

**4.** The grounds for relief under Civ.R. 60(B) are (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial; (3) fraud, misrepresentation or other misconduct of an adverse party; (4) that the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed, vacated, or it is no longer equitable that the judgment would have prospective application; and (5) any other reason justifying relief from judgment.

**5.** There is a common misconception that Civ.R. 60(B)(1), (2) and (3) motions have a statute of limitations which is one year from judgment. This is incorrect. The rule requires these motions to be made within a *reasonable time,* but in no event more than one year after the judgment or order.

What is also clear from *Strack* is that it is up to the court to determine which prong of Civ.R. 60(B) properly applies under the facts and circumstances presented, and to recast the motion if necessary.[6] The specific facts of *Strack* are helpful in understanding this principle.

Nine years after he had been judicially declared the father of a child, Strack filed a motion for relief from the judgment of paternity, coming forward with a blood test which excluded him as the father. Strack argued that he was entitled to relief from judgment under Civ.R. 60(B)(4) or (B)(5). The Supreme Court held that, despite Strack's contention, this was a motion under Civ.R. 60(B)(2), newly discovered evidence, and determined that Strack's motion was untimely. Although genetic blood testing was not yet available when Strack was adjudicated the father, it became available and admissible five years later. Because Strack waited four more years after the test had become available, the court found that he had filed for relief from judgment too late. The court looked to the time when the scientific evidence became available to Strack and not when he decided to take advantage of the test in holding that Strack should not have been allowed to reopen the issue of paternity.

In this case, Hamm filed a motion delineated as "60(B)," in which he sought relief from the judgment of paternity, without specifying a branch of Civ.R. 60(B). The meager record before us discloses that Hamm wanted a blood test, believed he had been falsely accused of being the child's father, and could not afford the test at the time he acknowledged paternity three years earlier.

The court in this case made absolutely no determination in advance about which ground for relief from judgment Hamm was alleging under Civ.R. 60(B).[7] The court also failed to consider other interests involved in this case in weighing

---

**6.** Under similar factual scenarios, some courts have allowed the use of the liberal provisions of Civ.R. 60(B)(5), generally taking the view that any misrepresentation in connection with a matter pending before the court is a fraud on the court, and thus allowing the reopening of a judgment of paternity on this ground. See, *e.g., Taylor v. Haven* (1993), 91 Ohio App.3d 846, 633 N.E.2d 1197; *Holt v. Cline* (June 23, 1992), Richland App. No. CA–2905, unreported, 1992 WL 173368; *Mitchell v. Mitchell* (Feb. 12, 1987), Cuyahoga App. No. 50889, unreported, 1987 WL 6545; *Bottke v. Bottke* (Feb. 10, 1993), Summit App. No. 15682, unreported, 1993 WL 28578. Other courts have taken the position that, at best, a misrepresentation about paternity is only a fraud by one party upon the other, and not a fraud on the court, thus limiting relief from judgment to the one-year outer limit of Civ.R. 60(B)(3). I find this latter view more persuasive. See, especially, *Hartford v. Hartford* (1977), 53 Ohio App.2d 79, 83–84, 7 O.O.3d 53, 55–56, 371 N.E.2d 591, 595; see, also, *In re Belden* (May 25, 1993), Miami App. No. 92–CA–21, unreported, 1993 WL 179254; *Cunningham v. Bailey* (Oct. 7, 1987), Licking App. No. CA–3284, unreported, 1987 WL 18639; *Garrison v. Garrison* (Oct. 2, 1986), Cuyahoga App. No. 50951, unreported, 1986 WL 11520.

**7.** It was only *after* the test was taken that the court decided this was a motion under Civ.R. 60(B)(4). I believe the court must decide the basis of a Civ.R. 60(B) motion before allowing the movant to proceed.

the equities of reopening this serious matter, such as the interest of the child, the support ability of the mother, whether Hamm had developed a relationship with the child, and whether there was another father figure in the child's life. In fact, the *only* inquiry at all made by the court in reviewing Hamm's motion was to ask the mother three times what harm there could be in allowing Hamm to have the blood test. This is nowhere near the scrutiny required by *Strack* or by Civ.R. 60(B) practice.

In analyzing the contents of Hamm's motion for relief from the adjudication of paternity, I believe it is clear Hamm is alleging either fraud, a Civ.R. 60(B)(3) motion, or newly discovered evidence, a Civ.R. 60(B)(2) motion. Neither is proven; both are untimely. Hamm fails to develop his view of being falsely accused. His claim of newly discovered evidence is even less compelling than in *Strack* because, unlike the facts in *Strack*, genetic testing was available to Hamm at the very first hearing on paternity and Hamm expressly waived his right to the test. Hamm's last reason, inability to afford the test at the time of the paternity hearing in March 1992, states no Civ.R. 60(B) ground at all. Hamm had an absolute right to delay the hearing on paternity until he could accumulate funds for the test. *Hamilton Cty. Dept. of Human Serv. v. Ball* (1986), 36 Ohio App.3d 89, 521 N.E.2d 462. I am persuaded that Hamm has not demonstrated any ground for relief from judgment. Making a very poor decision three years earlier is not cognizable under Civ.R. 60(B) and certainly not compelling enough to reopen a court judgment of paternity. I, therefore, conclude that the trial court abused its discretion in allowing the issue of paternity to be reopened in this case by granting Hamm's Civ.R. 60(B) motion.

SUNDERMANN, Judge, dissenting.

The facts in this case are undisputed. Appellee was living with his girlfriend, who gave birth to a child. He admitted paternity and waived any rights to a DNA test. Three years later, he petitioned the court to have the test taken at his expense, and this was granted. The DNA test conclusively proved that appellee is not the father of the child. He was current in his child support at the time. Appellant and the majority say that appellee's motion must be brought under Civ.R. 60(B)(1), (2), and (3), and since it was filed after more than a year, it must be denied. They cite *Strack v. Pelton* (1994), 70 Ohio St.3d 172, 637 N.E.2d 914.

Here the trial court found that Civ.R. 60(B)(4) applied in this case. That rule provides for vacating a judgment if "it is no longer equitable that the judgment should have prospective application." This clearly seems to be the section of the rule that should be applied. Appellee is not asking that support already paid should be refunded, but only that he should not be required to pay support in the

future for a child that is conclusively not his. To require him to pay an additional $43,000 in child support would be unconscionable. The name of the real father is in possession only of the mother, and she should not benefit further from the appellee.

In *Strack*, the court says that judges are required to "consider the two conflicting principles of finality and perfection." No such decision is required here; perfection would be refunding to appellee all monies paid to date. This he is not seeking. He only requests that he not be required to pay support in the future for a child that is conclusively not his. Applying Civ.R. 60(B)(4) would correct this manifest injustice. I respectfully dissent from the majority's refusal to do so.