**Ray FERGUSON, Appellant,**

v.

**STATE of Alaska, DEPARTMENT OF REVENUE, CHILD SUPPORT ENFORCEMENT DIVISION ex rel. P.G., Appellee.**

No. S–8123.

Supreme Court of Alaska.

April 30, 1999.

Rehearing Denied June 24, 1999.

Jody Davis and Andrew Harrington, Alaska Legal Services Corporation, Fairbanks, for Appellant.

Scott Davis, Assistant Attorney General, Fairbanks, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: MATTHEWS, Chief Justice, COMPTON, EASTAUGH, FABE, and BRYNER, Justices.

OPINION

EASTAUGH, Justice.

## I. INTRODUCTION

Six years after Ray Ferguson admitted paternity of Paul Gold and a paternity judgment was entered against Ferguson, blood tests excluded Ferguson as Paul's father. Ferguson then sought relief from the superior court, which vacated the paternity judgment and ordered the Child Support Enforcement Division (CSED) to cease collecting future child support, but refused to extinguish the arrearages that had accrued under the judgment. Because Ferguson sought and received relief only under Alaska Civil Rule 60(b)(5), and argued only that the judgment should no longer have prospective application, we affirm, and reject Ferguson's argument that he should not have to pay the arrearages that accumulated before the superior court disestablished paternity.

## II. FACTS AND PROCEEDINGS

Paul Gold was born in February 1986. In February 1991 Paul's mother, Rebecca Gold, signed a paternity affidavit alleging that Ray Ferguson was Paul's father.[1] Based on this affidavit, CSED filed a Complaint for Establishment of Paternity against Ferguson. The complaint alleged that Ferguson was Paul's biological father and that Ferguson owed Paul a duty of support from the date of Paul's birth.

Ferguson admitted these allegations. He also signed and filed an Acknowledgment of Paternity, admitting that he was Paul's father and acknowledging that he could be held financially responsible for Paul. Accordingly, on July 5, 1991, the court entered a judgment in favor of CSED and an order adjudicating Ferguson to be Paul's father.

In October 1991 CSED issued a Notice and Finding of Financial Responsibility to Ferguson, imposing monthly child support of $792 and finding support arrearages of $37,-928 for the period of February 1, 1986 to November 30, 1991. In November 1995 CSED administratively reduced the monthly

support to $144, effective May 1, 1995. Although the parties' briefs do not expressly say so, it appears from the record that CSED sought reimbursement from Ferguson for public assistance paid on Paul's behalf.

In late 1995 or early 1996 Ferguson's daughter, Hadley Hess, learned that Rebecca Gold had stated that Ferguson was not Paul's father. Hess then arranged genetic testing of her father, Rebecca, and Paul. The test results excluded Ferguson as Paul's father.

In March 1997 Ferguson moved to vacate the judgment of paternity; relying on Alaska Civil Rule 60(b)(5), he argued that the paternity judgment should no longer have prospective application. He requested that the court order CSED to "cease collection ... of all past and future child support based on the paternity order."

CSED filed a limited opposition. It did not oppose the motion "as it pertains to prospective enforcement of his child support obligation from the date of filing of the motion." But it opposed any order which would restrict CSED's ability to collect child support arrearages accruing under the paternity judgment.

The superior court granted relief to Ferguson under Rule 60(b)(5) and vacated the paternity judgment. It ordered CSED to cease collecting future child support, but it denied Ferguson's request that CSED cease collecting arrearages. CSED later recalculated Ferguson's entire support obligation based on his actual income and determined that he owed $6,734.64 in arrearages.

Ferguson appeals.

## III. DISCUSSION

### A. Standard of Review

■ This case raises an issue concerning the legal effect of paternity disestablishment on existing child support arrearages. This is a legal question, which we review de novo, adopting the rule of law that is "most persua-

1. "Paul Gold" and "Rebecca Gold" are pseudonyms.

sive in light of precedent, reason, and policy." [2]

■ We exercise our independent judgment in interpreting the civil rules.[3]

### B. Alaska Civil Rule 60(b)(5)

Ferguson argues that he should not have to pay child support arrearages accruing between July 1991, when the paternity judgment was entered, and March 1997, when Ferguson moved to vacate the judgment. CSED responds that the superior court properly refused to extinguish Ferguson's arrearages because relief was granted to Ferguson under Rule 60(b)(5), which provides only prospective relief from judgments or final orders.

Alaska Civil Rule 60(b) provides in relevant part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:
>
> . . . .
>
> (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application.

Our previous Rule 60(b)(5) cases involved litigants who sought relief under that subsection, claiming that their judgment had prospective effect.[4] Ferguson sought both prospective and retroactive relief. It is a question of first impression in Alaska whether a litigant who obtains Rule 60(b)(5) relief on grounds that a judgment should not have prospective application is entitled to both prospective and retroactive relief.

Our previous descriptions of the scope and application of Rule 60(b)(5) suggest that relief under that provision is available only when judgments have prospective effect. In *Lawrence v. Lawrence*,[5] we stated that Rule 60(b)(5) encompasses any final judgment having prospective application.[6] We there held that a divorced father was entitled to relief from the "prospective facet" of a divorce decree under Rule 60(b)(5), stating that

> [i]t has been noted that the primary applicability of (b)(5) will be to injunctions of a continuing nature. On the other hand, Professor Moore has observed that "the breadth of (b)(5) is broad and encompasses any *final* judgment having prospective application." Thus in any circumstance where the judgment in question has prospective application, *relief under Civil Rule 60(b)(5) may be granted from its prospective features* when subsequent events make it no longer equitable that the judgment have prospective application.[7]

We have also distinguished between judgments with and without prospective application for purposes of relief under Rule 60(b)(5). In *Bauman v. Day*,[8] we held that parties were not entitled to Rule 60(b)(5) relief because they did not "explain how the final judgment here has prospective effect."[9] In *Dewey v. Dewey*,[10] we held that a former stepfather was not entitled to a modification of child support under Rule 60(b)(5) because he failed to provide "sufficient evidence of inequity in the judgment's prospective effect to warrant relief under 60(b)(5)."[11] And in *Lawrence*, we stated that "[w]hen a party seeks relief from a judgment, which does not have prospective application, because of a

---

2. See *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

3. See *Airoulofski v. State*, 922 P.2d 889, 892 (Alaska 1996).

4. See *Bauman v. Day*, 892 P.2d 817, 829 (Alaska 1995); *Dewey v. Dewey*, 886 P.2d 623, 626–27 (Alaska 1994); *Propst v. Propst*, 776 P.2d 780, 783 (Alaska 1989).

5. 718 P.2d 142 (Alaska 1986).

6. See *id.* at 146.

7. *Id.* (quoting 7 James Wm. Moore et al., *Moore's Federal Practice* ¶ 60.26[4], at 261–62 (2d ed.1985)) (emphasis added).

8. 892 P.2d 817 (Alaska 1995).

9. *Id.* at 829.

10. 886 P.2d 623 (Alaska 1994).

11. *Id.* at 628.

subsequent change in the law a Civil Rule 60(b)(1) motion should be used." [12]

■ If Rule 60(b)(5) relief is available only if a movant shows that the prospective application of a judgment is inequitable, it would be anomalous to give both prospective and retroactive effect to a modification after relief is properly granted under Rule 60(b)(5). We therefore hold that the "prospective application" requirement limits not only the circumstances in which Rule 60(b)(5) may be applied, but also the type of relief available under Rule 60(b)(5).

Our interpretation of Alaska Civil Rule 60(b)(5) is consistent with the federal courts' interpretation of the identical federal rule.

The prospective application provision of Federal Rule of Civil Procedure 60(b)(5) is given content by two United States Supreme Court opinions, *State of Pennsylvania v. Wheeling & Belmont Bridge Co.* [13] and *United States v. Swift & Co.* [14] Both opinions reflect the historic power of a court of equity to modify its decree in light of changed circumstances and describe how judgments may have prospective application. [15]

In *Wheeling*, the Court addressed the past and prospective effects of a judgment rendered three years earlier. In 1852 the Court had held that a particular bridge in Wheeling was an unconstitutional obstruction to commerce and ordered its abatement. [16] Congress subsequently enacted a statute declaring the bridge to be a lawful structure. In 1855 the Court distinguished between the present and prospective effects of the 1852 judgment, and held that the company that

owned the bridge remained liable for costs in the earlier proceeding, but that the part of the decree that required the bridge's removal could no longer be enforced. [17]

In *Swift*, the Court was asked to modify an injunction in light of changed circumstances. Although the Court declined to do so, it acknowledged that "[a] continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need," and that decrees are continuing if they involve "the supervision of changing conduct or conditions and are thus provisional and tentative." [18]

Relying on the principles announced in *Swift* and *Wheeling*, federal courts of appeal distinguish between the present and prospective effects of judgments for purposes of determining what relief is available under Federal Rule of Civil Procedure 60(b)(5). In *Marshall v. Board of Education*, [19] the court noted that the prospective application clause in Rule 60(b)(5) "incorporates the time-honored rule that a 'court of equity [may] modify an injunction in adaptation to changed conditions.'" [20] The court then distinguished between executory and final judgments, stating that "[Rule 60(b)(5)] empowers a court to modify a judgment only if it is 'prospective,' or executory," whereas a "judgment at law for damages for past wrongs is 'inherently final.'" [21]

Another court stated that "an order or judgment may be modified under [the prospective application clause] of Rule 60(b)(5) only to the extent that it has 'prospective

**12.** 718 P.2d at 145.

**13.** 59 U.S. (18 How.) 421, 15 L.Ed. 435 (1855).

**14.** 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932), *declined to follow by Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 379–80, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992); *see generally Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1138 (D.C.Cir.1988).

**15.** *See* 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2863, at 336–47 (1995).

**16.** *See Wheeling*, 59 U.S. at 429; *see also* Wright, *supra*, note 15, at 339.

**17.** *See Wheeling*, 59 U.S. at 431–32.

**18.** *Swift*, 286 U.S. at 114, 52 S.Ct. 460.

**19.** 575 F.2d 417 (3d Cir.1978).

**20.** *Id.* at 425 (quoting *Swift*, 286 U.S. at 114, 52 S.Ct. 460).

**21.** *Id.* (citations omitted) (holding that district court's refusal to vacate its award for damages for past overtime wages wrongfully withheld conformed with mandate of Rule 60(b)(5), notwithstanding Supreme Court's subsequent decision in unrelated decision that overruled precedent upon which damages award was predicated).

application,' " and concluded that, "the standard we apply in determining whether an order or judgment has prospective application within the meaning of Rule 60(b)(5) is whether it is 'executory' or involves 'the supervision of changing conduct or conditions.' "[22]

Relief under Rule 60(b)(5) is therefore available against only the prospective, or executory, aspects of judgments. A paternity judgment has prospective aspects that can be alleviated under Rule 60(b)(5), because a paternity judgment gives rise to prospective duties, including a duty to pay child support in the future. But each child support payment, as it becomes due, is a final judgment in its own right.[23] As a result, vacating Ferguson's paternity judgment under Rule 60(b)(5) eliminated only its prospective effect and did not preclude the collection of amounts past due. Given Rule 60(b)(5)'s limited scope, the superior court appropriately alleviated only the prospective effects of the paternity judgment and support order after Ferguson sought and received relief on grounds that the paternity judgment should no longer have prospective effect under Rule 60(b)(5). Accordingly, we affirm.

Jurists elsewhere have reached similar conclusions in the context of paternity disestablishment and child support arrearages. In *Strack v. Pelton*,[24] a putative father sought Rule 60(b) relief from a 1978 divorce judgment on grounds that a 1987 genetic test disestablished his paternity. The court held that his motion based on newly-discovered evidence was time-barred.[25] The dissent argued that relief was warranted on grounds that the judgment should not have prospective application, but that the putative father should not be reimbursed for any child support previously paid: "The judgment . . . need not be retroactively undone—but its prospective, inequitable application can be stopped easily. . . . Strack should not be refunded any of the payments he made prior to the filing of his motion, but he should not be forced to continue to pay child support. . . ."[26] The dissenting opinion in *Gosink v. Hamm*,[27] makes the same point in a case with analogous facts:

[Rule 60(b)(4)] provides for vacating a judgment if "it is no longer equitable that the judgment should have prospective application." This clearly seems to be the section of the rule that should be applied. Appellee is not asking that support already paid should be refunded, but only that he should not be required to pay support in the future for a child that is conclusively not his.[28]

Ohio's Rule 60(b)(4) is identical to Alaska's Rule 60(b)(5).

Finally, in *Department of Revenue v. W.Z.*,[29] a disestablished father sought reimbursement, but not under Rule 60(b), of child support paid after disestablishment of paternity.[30] The court implied that W.Z. could not be reimbursed (or escape any arrearages owed) even if he had sought relief under Rule 60(b), stating that "[a]lthough we shall assume that the defendant could be relieved from the prospective application of the support order under Mass. R. Civ. P. 60(b)(5),

---

**22.** *Twelve John Does*, 841 F.2d at 1138–39 (citations omitted). *See generally* John F. Wagner Jr., Annotation, *Construction and Application of Rule 60(b)(5) of Federal Rules of Civil Procedure, Authorizing Relief from Final Judgment Where Its Prospective Application Is Inequitable*, 117 A.L.R. Fed. 419, §§ 5–6, at 445–50 (1994).

**23.** *See* AS 25.27.225; *State ex rel. Inman v. Dean*, 902 P.2d 1321, 1323 (Alaska 1995) ("Alaska considers periodic child support obligations 'judgments' that vest when an installment becomes due but remains unpaid."); *Greene v. Iowa Dist. Court for Polk County*, 312 N.W.2d 915, 917–18 (Iowa 1981) ("The effect of an award of child support is to provide the custodial parent with a money judgment. Each installment becomes a judgment when due. Accrued installments thus become the vested right of the spouse entitled to the support and may not be taken away.") (citations omitted).

**24.** 70 Ohio St.3d 172, 637 N.E.2d 914 (1994).

**25.** *See id.* at 916.

**26.** *Id.* at 917 (Pfeifer, J., dissenting).

**27.** 111 Ohio App.3d 495, 676 N.E.2d 604 (1996).

**28.** *Id.* at 608.

**29.** 412 Mass. 718, 592 N.E.2d 1297 (1992).

**30.** *See id.* at 1298–99.

... Rule 60(b) presents no basis for retroactive relief from the support order."[31]

■ Ferguson contends that preventing CSED from collecting the arrearages is necessary to eliminate the prospective application of the vacated paternity judgment. He asks: "Does the 'prospective application' of the judgment, which is to be barred when relief is granted under Rule 60(b)(5), differentiate between prospective assessment of support (which the CSED agrees is barred), and prospective collection of support (which the CSED asserts is not barred) or does it encompass both?"

■ We conclude that Alaska Civil Rule 60(b)(5) differentiates between prospective assessment for support payable in the future and prospective collection of arrearages that resulted from a failure to pay past-due support. Collecting a previously owed money judgment is not a prospective application of the judgment. As one court has stated,

> [v]irtually every court order causes at least some reverberations into the future, and has, in that literal sense, some prospective effect; even a money judgment has continuing consequences, most obviously until it is satisfied.... That a court's action has continuing consequences, however, does not necessarily mean that it has "prospective application" for the purposes of Rule 60(b)(5).[32]

Moreover, the distinction Ferguson asks us to draw would unreasonably disfavor obligors who comply with court orders and pay child support and favor obligors who fail to pay child support and generate arrearages. Assuming that obligors who comply with child support orders will not be reimbursed even if their paternity is later disestablished,[33] the distinction Ferguson proposes would give child support obligors incentive not to pay child support, in hopes that paternity might someday be disestablished. Such a distinction would also give potential obligors incentive not to resolve paternity disputes promptly. CSED argues that it is a matter of social policy to resolve paternity disputes promptly. We agree.

Ferguson received the relief to which he was entitled under Rule 60(b)(5). That was the only basis for his motion; we need not consider whether more comprehensive relief might have been granted under some other part of Rule 60(b) if he had requested it. Because we affirm on the ground that Ferguson was entitled to only prospective relief under Rule 60(b)(5), we need not decide whether, as CSED argues, reducing child support arrearages after disestablishing paternity would be a retroactive modification of child support that federal law prohibits.[34]

### C. Effect of AS 25.27.166(d)

■ Ferguson argues that a judicial disestablishment order, like an administrative disestablishment determination, should extinguish child support arrearages. Alaska Statute 25.27.166 now requires the agency to grant relief from arrearages when paternity is administratively disestablished.[35] But

---

**31.** *Id.* at 1300 (footnote omitted).

**32.** *Twelve John Does,* 841 F.2d at 1138; *see also Ryan v. U.S. Lines Co.,* 303 F.2d 430, 434 (2d Cir.1962) ("Rule 60(b)(5) ... properly applies only to judgments with prospective effect, and so does not cover the case of a judgment for money damages.").

**33.** *See State, CSED v. Wetherelt,* 931 P.2d 383, 390–91 (Alaska 1997).

**34.** 42 U.S.C. § 666(a)(9) (1994) requires states to adopt

> [p]rocedures which require that any payment or installment of support under any child support order, whether ordered through the State judicial system or through the expedited processes required by paragraph (2), is (on and after the date it is due)—

....

> (C) not subject to retroactive modification by such State or by any other State;
>
> except that such procedures may permit modification with respect to any period during which there is pending a petition for modification, but only from the date that notice of such petition has been given, either directly or through the appropriate agent, to the obligee or (where the obligee is the petitioner) to the obligor.

**35.** AS 25.27.166 provides for administrative disestablishment of paternity, and requires that an administrative decision disestablishing paternity extinguish existing child support arrearages, but "only to the extent not prohibited by federal law":

> (a) The agency shall, by regulation, establish procedures and standards for the disestablish-

Ferguson's paternity was not administratively disestablished, and the legislature's silence about the effect of judicial disestablishment orders provides no relevant expression of legislative intention regarding any statute applicable to Ferguson. The relief required following judicial disestablishment is therefore governed by Alaska Civil Rule 60(b) and the applicable legal principles discussed in Part III.B.

### D. *Unjust Enrichment*

Ferguson argues that the State will be unjustly enriched if CSED is permitted to collect child support arrearages following vacation of the paternity judgment. We disagree.

*State, CSED v. Wetherelt*[36] controls. In that case, Wetherelt was identified as the father on the birth certificate of a child.[37] CSED collected money from Wetherelt for public assistance paid by the State on the child's behalf.[38] Wetherelt later disestablished paternity and sought a refund of the child support collected by CSED, claiming that the State would be unjustly enriched if it was permitted to retain the money.[39] We

held that Wetherelt was liable for support of the child before paternity was disestablished, and that he was therefore not entitled to a refund.[40]

*Wetherelt* precludes Ferguson's requested relief. If Wetherelt had no right to a refund, Ferguson may not keep the money he owed CSED.[41]

■ Ferguson distinguishes *Wetherelt* on grounds that Wetherelt sought a refund of money already paid to CSED, whereas Ferguson seeks to prevent CSED from collecting the money from him in the first place. This is not a principled distinction. In *Indiana Department of Public Welfare v. Murphy*,[42] a disestablished father sought reimbursement from the state for money collected by the state under a child support order.[43] The court held that the state did not have to refund any money collected for payments that accrued before Murphy's paternity was disestablished in February 1989, even if the money was collected after February 1989: "It is not the date that the money was collected that is the determinative factor; rather, it is the date that the support payments accrued."[44] *Wetherelt* and the instant

---

ment of paternity of a child whose paternity was established in this state *other than by court order* if the paternity was not established by genetic test results that met the standards set out in AS 25.20.050(d) at the time the test was performed.

. . . .

(c) The agency shall disestablish paternity under this section if genetic test results are negative under the standard set out in AS 25.20.050(d) and if the other standards established in its regulations are met.
(d) *If a decision under this section disestablishes paternity, the petitioner's child support obligation or liability for public assistance under AS 25.27.120 is modified retroactively to extinguish arrearages for child support and accrued liability for public assistance based on the alleged paternity that is disestablished under this section. This subsection may be implemented only to the extent not prohibited by federal law.*
(Emphasis added.) This provision became effective January 1, 1996, when CSED was given the authority to establish and disestablish paternity administratively. *See* AS 25.27.020(a)(11); AS 25.27.165; AS 25.27.166; *Wetherelt*, 931 P.2d at 388 n. 8. These provisions were not in effect when Ferguson's child support obligation began to accrue. He applied for judicial, not administrative, relief from a judgment that judicially established paternity. The statute gave the agen-

cy no authority to disestablish paternity established by court order. *See* AS 25.27.166(a).

36. 931 P.2d 383 (Alaska 1997).

37. *See id.* at 385.

38. *See id.*

39. *See id.* at 384–90.

40. *See id.* at 390–91.

41. *See also Smith v. Ohio Dep't of Human Servs.,* 103 Ohio App.3d 149, 658 N.E.2d 1100, 1100–02 (1995) (holding that Smith was not entitled to restitution from Department of Human Services for child support collected by agency after he voluntarily acknowledged paternity although genetic tests later disproved paternity; stating that "the unjust impoverishment which [Smith] has suffered does not necessarily correspond to any unjust enrichment on the part of the state").

42. 608 N.E.2d 1000 (Ind.App.1993).

43. *See id.* at 1002.

44. *Id.* at 1003; *see also State ex rel. Blackwell v. Blackwell*, 534 N.W.2d 89, 91 (Iowa 1995)

case present the identical question: whether an individual who disestablishes paternity may be relieved from a previously existing duty to reimburse the state for public assistance paid for the period during which the child was the financial responsibility of the putative father.

Ferguson contends that *State, CSED v. Mitchell*[45] prevents CSED from collecting arrearages based on the vacated paternity judgment. We there affirmed in part a superior court order, issued under Rule 60(b), that retroactively vacated a child support order and directed CSED to reimburse child support payments previously collected from Mitchell, after Mitchell's paternity had been disestablished.[46] We stated that, "[a]bsent any limiting condition on the order vacating the default judgment or any other intervening principle, as between Mitchell and the State, the State should not be allowed to retain proceeds collected pursuant to a judgment which was set aside."[47]

Ferguson reasons that he would be entitled under *Mitchell* to be reimbursed if he had already paid the child support, and by extension, that CSED should not be able to collect arrearages. But *Mitchell* is inapposite to Ferguson's situation. The extent to which the State was unjustly enriched by retaining the previously paid child support was not fully litigated in *Mitchell*. The State there did not initially oppose Mitchell's motion for reimbursement.[48] The central dispute there was whether the State might have to repay amounts it collected from Mitchell and paid to the child's mother in excess of the public support.[49] Because the issue raised in *Mitchell* was limited, and because the State did not there dispute whether it could be required to pay back the monies it had retained (as distinguished from those paid to the child's mother), *Mitchell* does not control.

 We conclude that the State is not unjustly enriched by collecting arrearages accruing for monthly support Ferguson failed to pay before paternity was disestablished. As CSED maintains, "[Paul] was [Ferguson's] legal child regardless of the biology of the situation." Ferguson must pay for Paul's support owed during the period before he disestablished paternity.

## IV. CONCLUSION

Because Ferguson sought and was granted relief under Rule 60(b)(5) on the ground that the paternity judgment should no longer have prospective application, we conclude that Ferguson must pay the arrearages owed for the period between July 1, 1991, and March 1997, when he filed his motion to vacate the judgment of paternity. We therefore AFFIRM.

---

("[R]efusing to enforce a judgment as opposed to vacating a judgment 'constitutes a distinction without a difference.'") (citation omitted).

**45.** 930 P.2d 1284 (Alaska 1997).

**46.** *See id.* at 1289.

**47.** *Id.* (citing Restatement of Restitution § 1 (1937)).

**48.** *See id.* at 1287–88.

**49.** *See id.* at 1289–90.