Stephen KILPPER, Appellant,

v.

STATE of Alaska, DEPARTMENT OF
REVENUE, CHILD SUPPORT EN-
FORCEMENT DIVISION, Appellee.

Nos. S–7696.

Supreme Court of Alaska.

July 2, 1999.

Dennis P. James, Law Offices of Dennis P. James, Anchorage, for Appellant.

Diane L. Wendlandt, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before MATTHEWS, Chief Justice, COMPTON, EASTAUGH, FABE, and BRYNER, Justices.

## OPINION

BRYNER, Justice.

Stephen Kilpper acknowledged paternity of a child he did not father. Based on this acknowledgment, the superior court entered a judgment establishing his paternity. Years later, when the Child Support Enforcement Division (CSED) sought to enforce Kilpper's support obligation, Kilpper moved to disestablish paternity and proved that he was not the biological father. The court granted Kilpper's motion prospectively; despite Kilpper's request for a hearing on "an equitable defense to the[ ] claimed arrearages," the court summarily ordered him to pay all accrued support. We hold that because AS 25.27.226 entitled Kilpper to a hearing on his claimed defense, the court erred in entering the support judgment.

## I.  FACTS AND PROCEEDINGS

Keith [1] was born to Regina Foreman in Anchorage in 1982. Stephen Kilpper signed an affidavit acknowledging paternity and was listed on the birth certificate as Keith's father. But Kilpper knew that he was not Keith's biological father.

In May 1989, Regina began receiving public assistance on Keith's behalf. In 1991, as a first step towards obtaining reimbursement from Kilpper,[2] CSED filed an action to establish his paternity. Kilpper, who was then in Texas, signed and returned to CSED an affidavit acknowledging that he was Keith's father. Based on Kilpper's acknowledgment, the superior court granted CSED's motion for judgment on the pleadings and, in February 1992, entered an order formally declaring Kilpper to be Keith's father.

CSED, evidently uncertain of Kilpper's whereabouts, waited more than two years before taking further action to secure reimbursement from Kilpper. On June 3, 1995, the agency issued an administrative order requiring Kilpper to pay $303 per month in ongoing child support and fixing arrears of $34,666 for support payable from May 1989 through June 1995. Kilpper administratively appealed this decision by requesting an informal conference with CSED; the conference was held on September 5, 1995. That same day, Kilpper moved for a blood test to prove he was not Keith's biological father.

On September 26, 1995, CSED issued an informal conference decision, affirming its determination that Kilpper was responsible for ongoing support payments and arrearages and increasing his monthly support obligation to $592 and updating his accrued debt

---

1.  We use a pseudonym for the name of the child.

2.  AS 25.27.120 authorized CSED to claim reimbursement from Kilpper.

to $36,064. Meanwhile, the court granted Kilpper's motion for a blood test. On September 27 a lab report established that Kilpper was not Keith's father. Relying on this report, Kilpper moved for an order vacating the February 1992 judgment establishing his paternity.

Shortly thereafter, Kilpper pursued his administrative appeal to the next level, a formal conference, by notifying CSED of his objection to its informal conference decision. CSED took no action on this administrative appeal because paternity appeared to be the only issue that Kilpper contested and because he had already filed a superior court action to vacate the 1992 paternity order. CSED did not oppose Kilpper's motion to vacate the paternity order but argued that the court should take prospective action only and that Kilpper should remain liable for all support that had accrued before he filed his motion.

On February 8, 1996, the court vacated paternity as of October 23, 1995—the date Kilpper's motion to vacate paternity had been served on CSED. By a follow-up order, the court made it clear that its order vacating paternity only relieved Kilpper of obligations accruing after October 1995—he was not relieved of $36,064 in arrearages accrued from May 1, 1989 to September 30, 1995.

Prompted by this ruling, CSED moved to reduce Kilpper's child support arrearages to judgment under AS 25.27.226. Kilpper opposed the motion, maintaining that CSED's continuing collection efforts violated the court's previously issued orders and noting that his administrative appeal was still pending.

In an affidavit accompanying his opposition, Kilpper conceded that he had previously acknowledged paternity even though he knew that he was not Keith's father. But Kilpper claimed that he had thought he was "just giving my name for the birth certificate" and that Keith's mother had always been aware of Kilpper's whereabouts, yet "I was never informed that consenting to paternity would establish a basis for child support." Kilpper contended, "Had I known that the State of Alaska would seek child support from me I would have had the DNA testing done so as to immediately establish that I was not the biological father." He thus requested an evidentiary hearing, asserting, "I have an equitable defense to these claimed arrearages."

Without addressing Kilpper's request for a hearing, the superior court granted CSED's motion to reduce Kilpper's arrearages to judgment, entering judgment against him for $36,064 in unpaid child support accrued from May 1, 1989, through October 23, 1995.

Kilpper appeals.

## II. DISCUSSION

Kilpper first asserts that CSED committed various due process violations in seeking to hold him accountable for public assistance that it had paid on behalf of Keith. Second, he argues that the court lacked grounds to hold him liable for Keith's past support, because DNA testing conclusively established that he was not actually Keith's father. Last, Kilpper complains that the court erred in denying his request for a hearing on his proposed defenses to CSED's motion to reduce his arrears to judgment.

### A. Standard of Review

These issues all involve questions of law that we review de novo.[3] We are not bound by the lower court's decision and will "adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[4]

### B. Due Process

Kilpper claims that CSED violated his right to due process in several ways. He insists that he raised due process in his affidavit before the superior court—or that at least a due process claim can be gleaned from his affidavit. But our review of the record establishes that Kilpper did not raise a due process claim below. We generally will not consider arguments unless they were

---

3. *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

4. *Id.*

raised below.[5] Moreover, we are convinced that his due process claims do not rely on undisputed facts, are not readily gleaned from Kilpper's superior court pleadings, and do not involve plain error. Given these circumstances, we conclude that Kilpper has failed to preserve his claims for review.[6]

### C. DNA Test

Kilpper argues that, because his DNA test conclusively established that he is not Keith's biological father, the superior court lacked any basis for holding him liable for Keith's past child support payments. But Kilpper's argument mistakenly assumes that biological parenthood is the only basis upon which the court can impose a duty of support.

■■■■ As CSED correctly argues, by formally acknowledging paternity and allowing himself to be listed on Keith's birth certificate, Kilpper presumptively established himself as Keith's father and became his legal parent regardless of biological parenthood. This legal relationship remained in effect until 1995, when Kilpper established that he was not actually Keith's father.[7] As Keith's legal parent, Kilpper was legally bound to support his son, even in the absence of a court order requiring him to make child support payments.[8] His obligation encompassed the duty to reimburse others, including CSED, who provided needed support in the absence of payments by Kilpper.[9]

■■■■ On the basis of the 1995 DNA test, the court could terminate Kilpper's legal relationship to Keith and relieve him of any further obligation to pay support. But this action, by itself, did nothing to alter the reality that Kilpper had been Keith's legal father from birth until 1995. Nor did it automatically relieve Kilpper of the child support debt he had accumulated while he was Keith's father. Absent an independent justification for absolving Kilpper of the child support debt that had already accrued, Kilpper was entitled only to prospective relief.[10] To date, Kilpper has failed to show good cause for undoing his accrued child support debt.

### D. Failure to Hold a Hearing

Kilpper argues that the superior court erred in summarily granting CSED's motion to reduce his child support arrearages to judgment, thereby depriving him of a hearing at which he might have established grounds for retrospective relief. Alaska Statute 25.27.226 expressly entitles Kilpper to a hearing if he asserts any defense to CSED's collection efforts.[11] To determine whether Kilpper's affidavit "offered any defense" requiring a hearing, we must ask what "defenses," if any, might have justified granting Kilpper relief against CSED's motion to reduce his arrearages to judgment, and whether his affidavit sufficiently "offered" any such defense.

We have never squarely decided whether or when a presumed father who disproves biological paternity is entitled to anything more than relief from future child support payments. But our decisions suggest that broader relief might be available upon proof

---

5. *Arnett v. Baskous,* 856 P.2d 790, 791 n. 1 (Alaska 1993).

6. *See Sea Lion Corp. v. Air Logistics of Alaska, Inc.,* 787 P.2d 109, 115 (Alaska 1990).

7. *See Ferguson v. State, CSED,* 977 P.2d 95, 98–103 (Alaska 1999) (holding that Rule 60(b)(5) offers only prospective relief); *State, CSED v. Wetherelt,* 931 P.2d 383, 388 (Alaska 1997) (disapproving of extinguishment of child support arrearages after paternity disestablished).

8. *Matthews v. Matthews,* 739 P.2d 1298, 1299 (Alaska 1987).

9. *Id.*

10. *See Ferguson* at 98–103; *Wetherelt,* 931 P.2d at 388.

11. AS 25.27.226 provides, in relevant part:

> The obligor shall respond [to a motion requesting establishment of a judgment] no later than 15 days after service by filing an affidavit with the court. If the obligor's affidavit states that the obligor has paid any of the amounts claimed to be delinquent, describes in detail the method of payment or offers any other defense to the petition, then the obligor is entitled to a hearing. After the hearing, if any, the court shall enter a judgment for the amount of money owed. If the obligor does not file an affidavit under this section, the court shall enter a default judgment against the obligor.

of grounds that would warrant retrospective relief from judgment under Alaska Civil Rule 60(b).[12] In addition, we have indicated that an obligor may be entitled to raise defenses of estoppel and waiver against CSED when it seeks to collect arrearages upon an assigned claim for public assistance rather than on behalf of the custodial parent.[13]

██ In the present case, Kilpper's affidavit described circumstances vaguely suggesting waiver and estoppel; he also advanced a conclusory claim of "an equitable defense to these claimed arrearages." These generalized assertions do not permit us to rule out the possibility that Kilpper might prove a successful defense if given a hearing to do so. Yet Kilpper's vague and cryptic description of his proposed defenses raises a serious question as to whether they are sufficient, as described, to require an evidentiary hearing.

Ordinarily, we might resolve this question by a straightforward application of Alaska Civil Rule 77. Specifically, Civil Rule 77(c)(2) provides that to oppose a motion, a party must "[s]erve and file a brief, complete written statement of the reasons in opposition to the motion, which shall include an adequate answering brief of points and authorities." Kilpper did not comply with these requirements. He provided no points and authorities and did not make clear the defenses he desired to assert. In short, if Civil Rule 77(c)(2) clearly governed the question of Kilpper's right to a hearing on the defenses set out in his affidavit, then the superior court could properly have ignored

his request for a hearing and decided CSED's motion summarily.

But the question is not so straightforward. As we have previously indicated, AS 25.27.226 specifically governed Kilpper's response to CSED's motion. This statute required Kilpper to respond by affidavit to CSED's motion and provided that if his affidavit "offer[ed] *any . . . defense* to the petition, then [he was] *entitled* to a hearing" (emphasis added). No decision of this court has previously interpreted Civil Rule 77 to apply to or to modify section 226's literal language, which seemingly creates an automatic right to a hearing upon the filing of an affidavit offering "any . . . defense" other than payment.[14]

██ Of course, we recognize that holding an evidentiary hearing in the absence of any genuinely disputed material facts makes little sense. Accordingly, the superior court certainly had discretion to require, before conducting a hearing, that Kilpper offer prima facie evidence of a successful defense under standards set out in Civil Rule 77(c)(2).[15] But without express notice of the court's intent to hold him to this standard, Kilpper reasonably might have read AS 25.27.226 at face value and assumed from its literal language that his affidavit's vague offer of defenses would suffice to give him a hearing at which he would be able to flesh out his claims.

Our review of Kilpper's pleadings leaves us skeptical of his ability to allege or prove circumstances warranting relief from the su-

---

**12.** *See Ferguson* at 101 (suggesting that retrospective relief might be appropriate under some provisions of Rule 60(b), but declining to approve retrospective relief to a disestablished father who had alleged and proved grounds for relief under Rule 60(b)(5), which provides solely for prospective relief); *compare State, CSED v. Mitchell,* 930 P.2d 1284, 1288–90 (Alaska 1997) (affirming in part a superior court order, issued under Rule 60(b), that retroactively vacated a previously entered child support order and directed CSED to reimburse child support payments collected from an individual whose paternity the court had disestablished), *with Wetherelt,* 931 P.2d at 387–91 (reversing a superior court order requiring CSED to reimburse previously collected child support payments to a former father whose paternity the court had newly disestablished and who had neither alleged nor

proved grounds for relief from judgment under Rule 60(b)).

**13.** *See Benson v. Benson,* 977 P.2d 88, 93–94 (Alaska 1999); *State, CSED v. Valdez,* 941 P.2d 144, 154 n. 14 (Alaska 1997).

**14.** Section 226 treats a payment defense somewhat differently, requiring an obligor who raises this defense to "describe[ ] in detail the method of payment." Thus, the mere assertion of a defense of payment or partial payment does not entitle the obligor to a hearing.

**15.** Moreover, in our view, the court would not have erred in declining to hold a hearing had Kilpper's affidavit committed him to a specific defense or defenses that were facially meritless.

perior court's 1992 judgment establishing his paternity and child support obligation.[16] But before his defenses can be summarily rejected, Kilpper is entitled to advance notice of what he is required to do to obtain a hearing. Given that AS 25.27.226 might have led Kilpper to believe that he could obtain a hearing by listing any defense in his affidavit, we are not persuaded that Kilpper was given fair notice or a fair opportunity to be heard.

Because Kilpper's affidavit asserts defenses that are not patently meritless, we conclude that a remand is necessary to give Kilpper an additional opportunity to assert his defenses with sufficient specificity to meet the requirements of Civil Rule 77(c)(2). If Kilpper offers defenses on remand that entitle him to a hearing under Rule 77(c)(2), the court should grant his request for a hearing.[17]

## III. CONCLUSION

For the foregoing reasons, we REMAND this case for further proceedings.

COMPTON, Justice, with whom MATTHEWS, Chief Justice, joins, dissenting in part.

CSED's motion to reduce arrears to judgment was brought under AS 25.27.226, which governs the collection of past-due support. It requires that the obligor, in response to a motion to establish judgment, file an affidavit with the court. If the affidavit "states that the obligor has paid any of the amounts claimed to be delinquent, describes in detail the method of payment or offers any other defense to the petition, then the obligor is entitled to a hearing."

Kilpper's opposition to CSED's motion to reduce arrears to judgment and accompanying affidavit "vaguely suggest[ ] waiver and estoppel."[1] His "vague and cryptic description of his proposed defenses raises a serious question as to whether they are sufficient, as described, to require an evidentiary hearing."[2]

Kilpper's primary contention is that arrears should not be reduced to judgment, because doing so would violate the prior court order disestablishing paternity. This is not a meritorious defense. The trial court had explained that its prior order only prospectively eliminated Kilpper's obligation to provide support to Keith.

Kilpper's affidavit concludes with the following language: "I believe I have an equitable defense to these claimed arrearages. I request a hearing prior to April 26, 1996." This court holds that what it has termed as "vague and cryptic" is sufficient to require that the trial court do something. The rationale for this holding is questionable.

Civil Rule 77(c)(2) provides that, to oppose a motion, a party must "[s]erve and file a brief, complete written statement of the reasons in opposition to the motion, which shall include an adequate answering brief of points and authorities." Kilpper's opposition and affidavit did not comply with this rule. No points and authorities were provided and the defense he desired to assert was not made clear.

*State v. Alaska International Air, Inc.*[3] provides some guidance. In that case we were required to decide whether a motion to dismiss was adequate to "join the issue be-

---

**16.** *See, e.g., Dewey v. Dewey,* 886 P.2d 623, 626–29 (Alaska 1994) (discussing the application of Rule 60(b) in the context of a non-parent's belated motion for relief from a child support order entered by stipulation upon the dissolution of his marriage to the child's mother).

**17.** If, on remand, Kilpper does show grounds for relief under Rule 60(b), the superior court might be faced with a question of whether retroactive relief, though permissible under a conventional application of Rule 60(b), might nonetheless be barred in the peculiar context of child support cases by provisions of federal or state law. The

parties have not briefed this issue, and it would be premature for us to decide it now. Nevertheless, we note that no child support order was in effect during the period covered by the judgment establishing Kilpper's arrearages; accordingly, altering Kilpper's arrearages would not in itself amount to a retroactive modification of Kilpper's child support obligation. *See Benson* at 92–93.

**1.** Op. at 733.

**2.** *Id.*

**3.** 562 P.2d 1064 (Alaska 1977).

fore the court."[4] We looked to Civil Rule 77(b)(2), which contains the same requirements as Civil Rule 77(c)(2), but applies to motions rather than oppositions.[5] The motion to dismiss at issue in *Alaska International Air* contained only a one-and-a-half page memorandum which was "devoid of any authorities and merely raised three somewhat dubious issues."[6] We concluded that the motion was "so sparse as to prove frivolous."[7] Kilpper's opposition was similarly devoid of authority and failed to specify the defenses he wished to put at issue.

The court notes that no prior decision has explicitly held that Civil Rule 77 modifies the language of AS 25.27.226.[8] However, there is no authority suggesting that compliance with civil motion practice rules is rendered unnecessary by a simple statutory acknowledgment that an individual offering a defense is entitled to a hearing. Alaska Statute 25.27.226 does not purport to modify Civil Rule 77.

The court notes that "holding an evidentiary hearing in the absence of any genuinely disputed material facts makes little sense."[9] It also notes the trial court had the discretion to require Kilpper to "offer prima facie evidence of a successful defense under standards set out in Civil Rule 77(c)(2),"[10] a rule which the court may have just held does not apply to the statute. Since Kilpper may have taken the statute at face value, opines the court, he may have assumed he was going to get a hearing at which he could "flesh out his claims,"[11] whatever they might be. While the court is skeptical of Kilpper's ability to allege or prove circumstances warranting relief, he is entitled to advance notice "of what he is required to do to obtain a hearing."[12] He was not given "fair notice or a fair opportunity to be heard."[13] The court holds that he must be given an opportunity to meet the requirements of Civil Rule 77(c)(2).

We are left to wonder whether the legislature has inadvertently amended a rule of court, or whether Kilpper has inadvertently successfully argued that he was denied due process of law.

If the rule does not apply of its own force to require Kilpper to file pleadings that are more than "vague and cryptic," then the statute has amended the rule. If the statute standing alone does not give Kilpper "fair notice and an opportunity to be heard," then it must be unconstitutional as applied to Kilpper. Yet Kilpper does not claim he was misled by the statutory language, or that the statute is unconstitutional. However, once we have entered the realm of speculation, what Kilpper claims may be of little importance. Indeed, Kilpper does not even ask for a hearing at which he can establish claims concerning the nature of which this court can only speculate. He asks that the trial court's "judgment be vacated and this matter be remanded to CSED for a determination of who is the biological father ... so that proper and just support can be assessed against that individual." And we must assume that if the trial court had discretion to require more of Kilpper before it proceeded with a hearing, it could have proceeded without requiring more of him.

Were Kilpper a pro per litigant, arguably the court's decision could be justified on the basis of simple fairness to the uninformed. However, as Kilpper was represented by an attorney, the pro per standard does not apply. In my view the court's analysis is not sound. Since it is not clear what the court has held, I cannot agree with this part of its decision.

In my view Kilpper's opposition did not adequately raise a defense which would have

---

4. *Id.* at 1068.

5. *Id.* at 1068–69.

6. *Id.* at 1069.

7. *Id.* at 1068.

8. Op. at 733.

9. *Id.*

10. *Id.*

11. *Id.* at 733.

12. *Id.*

13. *Id.*

required a hearing pursuant to AS 25.27.226, since Kilpper did not comply with Civil Rule 77(c)(2). The statute and rule must be read together. The superior court did not err in entering judgment without conducting a hearing.