**STATE of Alaska, DEPARTMENT OF REVENUE, CHILD SUPPORT ENFORCEMENT DIVISION, ex rel. P. M., Appellant,**

v.

**Enoch L. MITCHELL, Appellee.**

No. S–6890.

Supreme Court of Alaska.

Jan. 17, 1997.

David L. Brower, Assistant Attorney General, Nome, and Bruce M. Botelho, Attorney General, Juneau, for Appellant.

H. Conner Thomas, Larson, Timbers & Van Winkle, Inc., Nome, for Appellee.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH, and FABE, JJ.

EASTAUGH, Justice.

## I. INTRODUCTION

The Alaska Department of Revenue Child Support Enforcement Division (CSED) appeals a superior court order requiring CSED to reimburse Enoch Mitchell for child support he paid pursuant to a 1990 default judgment that the court set aside in 1993. We conclude that it was not error to order CSED to reimburse Mitchell those amounts which the State retained, but that it was error to order CSED to reimburse Mitchell for those amounts the State paid as Aid to Families with Dependent Children (AFDC). We therefore affirm in part and reverse in part and remand for modification of the judgment.

## II. *FACTS AND PROCEEDINGS*

### A. *Allegations Regarding Paternity*

Peter Marks was born in May 1987. In July 1989 his mother, Ellen Marks (Marks), signed a CSED paternity affidavit naming Enoch Mitchell as the child's father; it was filed with CSED in Anchorage.[1] In early November 1989 Mitchell completed an Aid to Families with Dependent Children (AFDC) paternity statement declaring that he was not Peter's father. At the bottom of the statement Marks agreed with Mitchell's denial of paternity; she signed the statement November 6. Marks later claimed that she signed the statement at Mitchell's request "because he didn't want to pay child support." The AFDC statement was filed with the Alaska Department of Health and Social Services, Division of Public Assistance (DPA), in Kotzebue in November 1989. CSED claims it did not receive a copy of the AFDC statement until the Kotzebue superior court sent it to CSED in June 1993.

### B. *The Default Judgment*

In March 1990 CSED filed a complaint alleging that Mitchell was Peter's father and owed a duty to provide child support as required by law. Mitchell did not answer or appear after he was served. CSED applied for an entry of default and a default judgment in July. Superior Court Judge Paul B. Jones entered a default judgment establishing paternity on July 23. The clerk entered default on August 9.

After the default judgment adjudicated Mitchell to be Peter's father, CSED began to collect child support from Mitchell pursuant to AS 25.27.020(2)(C)(iii)(4). In November 1990 the superior court ordered Mitchell to pay CSED monthly child support of $752.

As of September 1994 CSED had collected $14,461 from Mitchell.[2] Of that amount, the State retained $3,945 for public assistance and passed $9,146 through to Marks, the custodial parent. It refunded the remaining $1,369 to Mitchell pursuant to a court order discussed below.

### C. *The Rule 60(b) Motion to Set Aside*

In June 1993 Carol Wesley, acting as Mitchell's friend, apparently conversed by telephone with Kotzebue Clerk of Court May Pannick and then wrote Pannick a letter enclosing a copy of the November 1989 AFDC statement signed by Mitchell and Marks. Wesley and Mitchell signed the letter. It was filed in the Kotzebue superior court on June 7, 1993.

In apparent response to the court's receipt of the November 1989 AFDC statement, Superior Court Judge Richard H. Erlich conducted a hearing at Kotzebue in September 1993 and set aside the default judgment pursuant to Civil Rule 60(b).[3] The court stated that "[b]ased upon the AFDC Paternity Statement filed herein the court finds good cause to grant Defendant's Civ. R. 60(b) Motion to set aside...." The court also ordered that a hearing be held December 1, 1993, in anticipation of the availability of blood test results. Because Marks was uncooperative, blood testing was not completed by December 1. On December 1 the court orally dismissed the action without prejudice. The court continued the hearing until May 1994.

In May 1994 Mitchell, now represented by counsel, moved for return of all money collected from him pursuant to the default judgment. CSED did not initially respond. The court granted the motion May 31 and or-

---

1. "Peter Marks" and "Ellen Marks" are pseudonyms.

2. The State apparently retained Mitchell's permanent fund dividends from 1990 to 1993, obtained some of his "income tax" (presumably refunds) and his unemployment benefits, and garnished fifty-five percent of his wages.

3. The court seems to have raised the Rule 60(b) motion *sua sponte*, as Mitchell and Wesley did not request that relief in their June 3 letter.

Apart from the June Wesley–Mitchell letter to Pannick, the appellate record does not memorialize the existence or substance of the Wesley–Pannick conversation. The superior court seems to have considered the November 1989 AFDC statement sufficient to raise the relief issue without formal motion.

Rule 55(e) provides that "if a default judgment has been entered, [the court] may ... set it aside in accordance with Rule 60(b)."

dered the State to reimburse all money collected pursuant to the default judgment.

In late June the State filed, with the court's permission, a late response to Mitchell's motion. The State asserted that it had failed to oppose because it had erroneously assumed that the reimbursable amount did not include the money sent directly to Marks. In addition, the State asked that the May 31 order of reimbursement be held in abeyance until paternity could be decided on the merits. The court denied the State's request and affirmed the order setting aside the default judgment and the oral order dismissing the action without prejudice. The State subsequently opposed reimbursement, arguing that the default judgment was valid and that CSED should not have to reimburse money collected in reliance on a valid court order. Mitchell argued in response that by providing the court with only Marks's CSED affidavit and not the Mitchell–Marks AFDC statement, the State had misled the court, "whether intentionally or not," and that the default judgment consequently was not valid.

At about the same time, blood tests established that Mitchell was not Peter's father.

In January 1995 the superior court held that the AFDC statement put the State on notice of Mitchell's denial of paternity, whether or not AFDC forwarded the statement to CSED. The court reasoned that because the State was on notice of this denial, it was obligated to notify the court before the default judgment was issued. The court ordered CSED to reimburse Mitchell for his payments, including money retained by CSED and money passed through to Marks as the custodial parent. The court stated,

> Given the fact that the State was aware of Ms. [Marks's] equivocation, the fact that

her agreement to the denial resulted in a withdrawal of the allegation, the fact that the State is the one who prosecuted this matter and did not properly advise the court of the exculpatory Denial and the fact that the reality is that Mr. Mitchell is not the father, it is ordered that the state shall reimburse Mr. Mitchell the funds forwarded to the mother.

CSED appeals.

## III. DISCUSSION

### A. The Validity of the Default Judgment

■ Although CSED does not argue that it was error to set aside the default judgment under Rule 60(b),[4] it maintains that the default judgment was valid and that CSED consequently should not have been ordered to reimburse any funds collected from Mitchell pursuant to that judgment.

Mitchell argues that "the issue is not whether the Court acted improperly when it entered the default judgment, but, rather, what should happen after a default judgment is set aside."

■ In our view, the appropriate starting point is the one suggested by Mitchell. Because the default judgment was set aside without objection by CSED and CSED does not argue on appeal that it was error to set it aside, the legal question is whether Mitchell is entitled to full reimbursement.[5] This question raises only legal issues.[6]

Given our resolution of the remedy issues presented, it is not necessary to decide whether the judgment was the result, as Mitchell argues, of negligence or fraud attributable to the State.

---

4. In its statement of points on appeal, CSED contested the use of Rule 60(b) to set aside the default judgment, asserting that the June 1993 letter was insufficient to constitute a Rule 60(b) motion and untimely by Rule 60(b) standards, and that it was error to grant relief on Mitchell's pre-complaint paternity denial.

Because CSED did not raise these issues below or argue them in its brief, we do not reach them. "[W]here an issue is not briefed on appeal, it will not be considered." Kenai Peninsula Borough v. English Bay Village Corp., 781 P.2d 6, 9 (Alaska 1989).

5. CSED does not argue that Mitchell is not entitled to any remedy, only that his recovery should be limited to that part of the collections that CSED retained, and that he should not be reimbursed by the State for amounts the State paid to Ellen Marks.

6. We review questions of law de novo. Langdon v. Champion, 752 P.2d 999, 1001 (Alaska 1988). We "adopt the rule of law that is most persuasive in light of precedent, reason, and policy." Guin v. Ha, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

## B. *Mitchell's Remedy*

CSED advances various theories why it was error to order CSED to reimburse Mitchell.

■ It first argues that Mitchell waived any claim for reimbursement. It candidly admits it did not argue waiver in the superior court. As CSED recognizes, we will not ordinarily consider arguments not raised below. *Arnett v. Baskous,* 856 P.2d 790, 791 n. 1 (Alaska 1993). We will, however, review arguments not raised below if the issue is " '1) not dependent on any new or controverted facts; 2) closely related to the appellant's trial court arguments; and 3) could have been gleaned from the pleadings,' or if failure to address the issue would propagate 'plain error.' " *Sea Lion Corp. v. Air Logistics of Alaska, Inc.,* 787 P.2d 109, 115 (Alaska 1990) (citing *State v. Northwestern Constr., Inc.,* 741 P.2d 235, 239 (Alaska 1987)). CSED cites *Sea Lion* and relies on plain error as justification for reaching the waiver issue.

■ Because waiver was not raised in the superior court, the parties did not explore whether Mitchell had intentionally relinquished a known right by making payments for three years after the default judgment was entered. Waiver would ordinarily have been a logical basis for opposing both the motion to set aside a default judgment and the motion for reimbursement, but would also ordinarily raise fact disputes about what the payor intended and knew. CSED's failure to object to setting aside the default judgment and to raise the waiver issue in opposing reimbursement is fundamentally inconsistent with its attempt to raise the issue for the first time on appeal.

Waiver is potentially dependent on new unresolved fact questions, is not closely related to CSED's arguments below, and could

not have been gleaned from the pleadings. CSED did not in some other way put into issue Mitchell's intentions or knowledge.

■ Nor can we say it was plain error for the superior court to fail to raise the waiver issue *sua sponte.* "In order for this court to notice plain error, the alleged error must affect substantive rights and be 'obviously prejudicial.' " *Burford v. State,* 515 P.2d 382, 383 (Alaska 1973). As we stated in *Miller v. Sears,* 636 P.2d 1183, 1189 (Alaska 1981), "[p]lain error exists where an obvious mistake has been made which creates a high likelihood that injustice has resulted." *See also Evron v. Gilo,* 777 P.2d 182, 186 (Alaska 1989); *In re L.A.M.,* 727 P.2d 1057, 1059 (Alaska 1986). Under these circumstances, we cannot say that it was plain error for the trial court to fail to raise *sua sponte* a theory not raised by CSED.[7]

We consequently do not reach the waiver issue.[8]

■ CSED also asserts that the superior court should have conditioned the vacation of the default judgment on not depriving CSED of payments received pursuant to the default judgment. The State did not ask that vacation of the default judgment be conditioned upon any limitation on a future claim for reimbursement. The State did not oppose vacation of the default judgment and initially did not oppose Mitchell's motion for reimbursement. Even after the default was set aside and the court ordered reimbursement, CSED took the position that "the issue of return of properly collected child support" should await a determination of paternity. It did not argue that vacation should be conditioned on relinquishment of a reimbursement claim as to any or all of the amounts collected from Mitchell.

7. CSED also argues that it would have been pointless to make this argument below, as the trial court considered the AFDC paternity statement to be an answer, and would have rejected any waiver argument. Under the circumstances of this case, we do not assume it would have been futile for the State to have raised this argument.

8. CSED also asserts that Mitchell is equitably estopped from seeking reimbursement. CSED

has not substantively briefed the elements of equitable estoppel. Apart from its failure to preserve the issue in the superior court, its failure to brief the issue on appeal waives the issue. *Adamson v. University of Alaska,* 819 P.2d 886, 889 n. 3 (Alaska 1991) ("[W]here a point is given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal.").

It was not plain error to fail *sua sponte* to condition vacation of the default judgment on relinquishment of any reimbursement claim.

The question should be whether CSED demonstrated any factual basis for denying or limiting Mitchell's reimbursement claim. As of the time the court first ordered reimbursement, CSED had made no argument supported by facts which would resolve the waiver and estoppel issues or from which its present arguments could be gleaned. Only after the court vacated the default judgment and ordered full reimbursement did CSED allege facts which arguably touch on the waiver, estoppel, and condition issues. Even then CSED's assertions could not permit resolution of the waiver and estoppel issues as a matter of law; they could be resolved now only if there were a remand and Mitchell were given a full opportunity to offer evidence bearing on the elements of those doctrines. Further, Mitchell timely moved for reimbursement after the court set aside the default judgment without objection from CSED. After the court vacated the default judgment, Mitchell did nothing to waive a reimbursement claim or to estop him from asserting such a claim.

That, however, does not end our inquiry regarding the appropriate remedy. CSED squarely raised the separate question of the actual scope of the remedy after the court vacated the default judgment. CSED, among other things, distinguished between collected amounts that were retained by CSED, and collected amounts that were paid to Marks and consequently not retained by the State.

■ Mitchell seeks restitution from the State of all moneys paid pursuant to the default judgment. "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Restatement of Restitution* § 1 (1937). This principle is in accord with our decision in *Alaska Sales and Serv., Inc. v. Millet*, 735 P.2d 743, 746 (Alaska 1987); *accord George v. Custer*, 862 P.2d 176 (Alaska 1993); *Darling v. Standard Alaska Prod. Co.*, 818 P.2d 677 (Alaska 1991). In *Alaska Sales*, we set forth three essential elements for a claim of unjust enrichment sounding in quasi-contract:

1) a benefit conferred upon the defendant by the plaintiff;

2) appreciation by the defendant of such benefit; and

3) acceptance and *retention* by the defendant of such benefit under such circumstances that it would be inequitable for him to retain it without paying the value thereof.

*Id.* at 746 (emphasis added). These equitable principles apply here because Mitchell seeks restitution from the State for benefits he conferred pursuant to the default judgment.

■ It is one thing to require the State to disgorge moneys held by it after the default judgment was set aside. Absent any limiting condition on the order vacating the default judgment or any other intervening principle, as between Mitchell and the State, the State should not be allowed to retain proceeds collected pursuant to a judgment which was set aside. *See Restatement of Restitution* § 1 (1937). Mitchell moved to set aside the judgment on the theory he was not Peter's father. The State did not object. The only justification for ordering Mitchell to pay was paternity; if Mitchell was not adjudicated to be Peter's father, CSED could not have obtained any payments from him. The State would be unjustly enriched if it were allowed to retain moneys paid by Mitchell under the vacated judgment. Thus, moneys retained by the State must be returned to Mitchell.

■ Those moneys which the State paid to Marks before the judgment was vacated and before collections ended stand in a different posture. The State paid those moneys to Marks as required by federal law. 42 U.S.C. § 657 (1989); 45 C.F.R. § 302.51 (1995). Here the question is whether the State or Mitchell should bear the loss of collected moneys the State necessarily paid Marks pursuant to federal law. As to these funds the State's position is analogous to that of an agent whose duty is to remit funds to a disclosed principal. In such circumstances the agent is not liable for a return of the funds if the agent did not have knowledge at the time of payment to the principal of the other party's right to recover the funds. 3

*C.J.S.* Agency § 363 (1973) ("An agent is not liable to a person who is entitled to the return of money paid to the agent in his representative capacity, if the latter has in good faith and without notice or knowledge of the other's right to reclaim, paid the money over to his principal...."). Moreover, under the standard set forth in *Alaska Sales,* in order to find unjust enrichment entitling a party to restitution, the "enriched party" must accept and *retain* the benefits conferred by the other party. *Alaska Sales,* 735 P.2d at 746. The State no longer retains those moneys, and consequently cannot be ordered to make restitution.[9]

It is not unjust that as between Mitchell and the State, Mitchell bear this loss. Mitchell could have, by responding to the complaint or communicating directly with CSED, put paternity into issue when he was first sued. He thus might have easily prevented the State from disbursing those amounts to Marks until the issue was resolved and indeed might have prevented collections. As to these amounts, restitution by the State is impossible because the State paid them out and did not retain them. Further, Mitchell has a potential source of recovery for the moneys the State paid over to Marks. Under *Matthews v. Matthews,* 739 P.2d 1298 (Alaska 1987), Mitchell, having provided child support which others owed, has a potential reimbursement claim.

■■■ We also conclude that the record does not create a genuine dispute about whether the State's actions in filing the complaint and obtaining a default judgment contributed more to the disbursements to Marks than Mitchell's failure to contest paternity. Mitchell argues that CSED's knowing reliance on the Marks paternity affidavit when obtaining the default judgment and CSED's failure to advise the court of the November 1989 Mitchell–Marks statement

works a fraud on the court that requires the court to order the State to reimburse all collected moneys to Mitchell. Assuming that intentional reliance by CSED on a false or disputed affidavit contradicted by the mother's recantation would entitle Mitchell to full reimbursement, the record does not support any such inference. There is no indication beyond unsupported surmise that CSED was aware of the November 1989 statement filed with the DPA. CSED is a division of the State Department of Revenue. DPA is a division of the State Department of Health and Social Services. The CSED affidavit was filed in Anchorage; the AFDC statement was filed in Kotzebue. Mitchell has not established the existence of a genuine fact dispute to be explored on remand.

## IV. *CONCLUSION*

For these reasons, we AFFIRM in part and REVERSE in part, and REMAND for entry of a corrected order requiring reimbursement of only those amounts retained by the State.

---

**9.** Given Mitchell's three-year delay in contesting the default judgment, it could be argued under *Restatement of Restitution* § 74 that it would be inequitable for Mitchell to seek restitution of amounts justifiably paid out by the State to Marks. Section 74 states, "[a] person who has conferred a benefit upon another in compliance with a judgment ... is entitled to restitution if the judgment is reversed or set aside, unless

restitution would be inequitable...." *Restatement of Restitution* § 74 (1937). Given our conclusion that the State need not reimburse Mitchell for moneys passed through to Marks because the State was not unjustly enriched, we need not address whether Mitchell's conduct would make his restitution claim against the State inequitable.