STATE of Alaska, DEPARTMENT OF REVENUE, CHILD SUPPORT ENFORCEMENT DIVISION, Appellant,

v.

Jeffrey A. MAXWELL, Appellee.

No. S–8886.

Supreme Court of Alaska.

Aug. 18, 2000.

Diane L. Wendlandt, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellant.

Kenneth C. Kirk, Anchorage, for Appellee.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

CARPENETI, Justice.

## I. INTRODUCTION

Krystal Maxwell, while married to but separated from Jeffrey Maxwell, gave birth to T.W. Both Krystal and Jeffrey knew that T.W. was not Jeffrey's child; the biological father (Kurt Walker) acknowledged his paternity of T.W.; and the Child Support Enforcement Division (CSED) apparently knew that Kurt Walker was T.W.'s biological father. Nonetheless, CSED administratively established a child support obligation for Jeffrey and large child support arrearages. Because Jeffrey was denied a fair and meaningful opportunity to rebut the presumption of paternity when CSED entered the support obligation against him, we affirm the decision of the superior court striking Jeffrey's child support obligation and disallowing enforcement of uncollected arrearages.

## II. FACTS AND PROCEEDINGS

Jeffrey and Krystal Maxwell married in October 1988 while Krystal was five months pregnant with the child of another man. She gave birth to the child in February 1989. Soon after the child's birth, the Maxwells permanently separated. Krystal then became involved in an intimate relationship with Kurt Walker. This relationship resulted in a second pregnancy, from which T.W. was born on August 14, 1991.

The Maxwells sought to dissolve their marriage in October 1991, but their petition was rejected by the court. They again sought a dissolution in November 1993, which was granted in January 1994. Although T.W. had been born while the parties were still married, the dissolution papers made no mention of him.

CSED first attempted to collect child support from Jeffrey in 1992 as reimbursement for public assistance paid for the first child. CSED pursued Jeffrey, the presumed father, because he and Krystal were married when that child was born. Jeffrey responded by successfully disestablishing his paternity of the child in 1993. However, nothing was done at that time regarding Jeffrey's presumed paternity of T.W. Apparently, neither Jeffrey nor Krystal understood that T.W. was also technically a child of the marriage.

Jeffrey was listed on the birth certificate as T.W.'s father in accordance with AS 18.50.160(d),[1] despite the fact that T.W. bore his biological father's surname.[2] Evidence suggests that Kurt Walker may have provided Krystal with an affidavit acknowledging paternity at the time of T.W.'s birth. It is unclear, however, who saw this affidavit. It was apparently never filed with a court or the Bureau of Vital Statistics. But CSED knew that Kurt Walker was T.W.'s biological father when, on December 21, 1993, it opened a file for T.W. and initiated the administrative process to collect child support from Jeffrey. CSED also knew Kurt Walker was living with Krystal and their child, T.W.

---

1. AS 18.50.160(d) provides:
 If the mother was married at conception, during the pregnancy, or at birth, the name of the husband shall be entered on the certificate as the father of the child unless: (1) paternity has been lawfully determined otherwise by a tribunal ...; or (2) both the mother and the mother's husband execute affidavits attesting that the husband is not the father ... and the mother and the other man execute affidavits attesting that the other man is the father....

2. The record indicates that Krystal resisted efforts to list Jeffrey as her husband for birth certificate purposes.

By 1994 CSED was actively seeking child support from Jeffrey for T.W. An order of support was issued and arrears were established on approximately April 16, 1994.[3] However, the Notice of Finding of Financial Responsibility (NFFR) was not served on Jeffrey until January 20, 1995. Jeffrey attempted to oppose CSED's action. He contacted CSED by telephone and explained that he was not the biological father.[4] But the CSED representative who spoke to Maxwell told him that his only recourse was to seek a judicial disestablishment of paternity.

After receiving this advice, Jeffrey did not formally contest CSED's administrative action. Nor did he immediately seek a judicial order to disestablish paternity. Instead, in July 1997, Jeffrey attempted to disestablish paternity by filing a motion in the Palmer Superior Court as a part of the previous dissolution action. That motion was denied because a dissolution action cannot determine paternity. Upon receiving notice that his motion was summarily denied, Jeffrey filed the complaint to disestablish paternity that gave rise to this case.

Meanwhile, CSED sought involuntary recovery against Jeffrey and collection began. The first two involuntary collections were withheld from Jeffrey's 1995 and 1996 Permanent Fund Dividend checks. Garnishments of his wages began in July 1997, presumably prompting both Jeffrey's motion to disestablish paternity and his subsequent lawsuit to the same effect.

Kurt Walker periodically paid voluntary child support for T.W. directly to Krystal beginning in November 1994. He filed to establish paternity and secure visitation rights in February 1997. Trial was held the following August, with the court finding paternity and ordering child support payments to be paid through CSED.

Jeffrey's action to disestablish paternity came to trial in June 1998. After a one-day trial, the superior court vacated the order of child support as of the filing date of Kurt Walker's complaint to establish paternity. The superior court also eliminated arrears due but unpaid as of that date and ordered a refund of involuntary payments withheld after that date. CSED appeals.

## III. DISCUSSION

### A. Standard of Review

 CSED challenges the superior court's elimination of the arrears that Jeffrey Maxwell owed.[5] Whether CSED's child support order was void presents a question of law that we review de novo,[6] adopting the rule of law that is "most persuasive in light of precedent, reason, and policy." [7] We may affirm the superior court's decision on any basis appearing in the record.[8]

### B. Jeffrey Is Entitled to Relief Under Alaska Rule of Civil Procedure 60(b)(4) Because He Was Not Accorded Due Process of Law.

 CSED argues that the superior court erred in vacating Jeffrey's child support arrears. It argues that because child support arrears are enforceable judgments, they may not be retroactively modified. While child support arrears are enforceable judgments,[9] we do not accord them more deference than other forms of judgment.

3. The record does not contain the actual order; accordingly, the exact date is uncertain.

4. The record shows that CSED returned Jeffrey's call on April 26, but CSED's records do not indicate the date of Jeffrey's call that prompted this response.

5. The superior court also ended Jeffrey's ongoing child support obligation when it disestablished his paternity of T.W. CSED does not appeal that aspect of the superior court's judgment.

6. Cf. Dewey v. Dewey, 969 P.2d 1154, 1157 (Alaska 1999) (reviewing de novo subject matter juris-

diction under Civil Rule 60(b)(4) (citations omitted)).

7. State, CSED v. Kovac, 984 P.2d 1109, 1111 (Alaska 1999) (citation omitted); Guin v. Ha, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

8. See Pierce v. Pierce, 949 P.2d 498, 500 (Alaska 1997).

9. See AS 25.27.225; Ferguson v. State, CSED, ex rel. P.G., 977 P.2d 95, 100 (Alaska 1999) ("[E]ach child support payment, as it becomes due, is a final judgment in its own right." (citations omitted)).

1. *Alaska Rule of Civil Procedure 60(b) indicates the circumstances under which relief is available in the instant case.*

As noted above, after being told that his only recourse was a judicial action to disestablish paternity, Maxwell did not formally challenge CSED's 1994 order establishing his child support obligation and arrears. As a result, the order became final thirty days after it was served on Maxwell in January 1995.[10]

The last sentence of Civil Rule 60(b) provides that "the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action." Civil Rule 60(b) is the only Civil Rule that provides relief from a judgment or order. Because the Alaska Statutes treat CSED's support orders as judgments for certain purposes,[11] Civil Rule 60(b) serves by analogy [12] to indicate the circumstances under which the superior court may grant relief from such orders.

■ In *Kilpper v. State, CSED*,[13] we suggested that this approach may be appropriate in cases like this one:

We have never squarely decided whether or when a presumed father who disproves biological paternity is entitled to anything more than relief from future child support payments. But our decisions suggest that broader relief might be available upon

proof of grounds that would warrant retrospective relief from judgment under Alaska Civil Rule 60(b).[14]

Since child support orders are treated like judgments, we hold that trial courts may look to Civil Rule 60(b) for guidance in determining when relief is available.

2. *Civil Rule 60(b)(4) relief was available to Jeffrey because CSED acted in a manner inconsistent with due process of law.*

■ Civil Rule 60(b)(4) provides for relief from a void judgment. A judgment is void if the court that entered the judgment was without jurisdiction to act, or if that court acted in a manner inconsistent with due process of law.[15] This rule of relief applies without time limitations [16] because a void judgment cannot gain validity simply by the passage of time.

Since the judgment at issue here was actually a child support order issued by CSED that later became a series of judgments by operation of law,[17] Jeffrey may not obtain relief unless the support order was issued without statutory authority or in a manner inconsistent with due process. Thus, the judgments were valid unless CSED lacked statutory authority to issue the original order of support or deprived Jeffrey of due process.

**10.** *See* AS 25.27.170(b).

**11.** AS 25.27.225 provides:

A support order ordering a noncustodial parent obligor to make periodic support payments to the custodian of a child is a judgment that becomes vested when each payment becomes due and unpaid. The custodian of the child, or the agency on behalf of that person, may take legal action under AS 25.27.226 to establish a judgment for support payments ordered by a court of this state that are delinquent.

**12.** We have previously applied other civil rules by analogy in appropriate cases. *See e.g., Pioneer Const. v. Conlon,* 780 P.2d 995, 1001 (Alaska 1989) (awarding attorney's fees under AS 23.30.145(c) by analogy to Civil Rule 82); *State v. Thompson,* 612 P.2d 1015, 1017 (Alaska 1980) (applying procedural Civil Rules by analogy to administrative proceedings); *Ketchikan Retail Liquor Dealers Ass'n v. State, Alcoholic Beverage*

*Control Bd.,* 602 P.2d 434, 439 n. 16 (Alaska 1979) (applying former Appellate Rule 9(d) by analogy to Civil Rule 37(b)(2)(A), which authorizes the imposition of a similar sanction for failure to make discovery).

**13.** 983 P.2d 729 (Alaska 1999).

**14.** *Id.* at 732–33.

**15.** *See Dixon v. Pouncy,* 979 P.2d 520, 525 (Alaska 1999) (citing *Perry v. Newkirk,* 871 P.2d 1150, 1153, 1157 n. 5 (Alaska 1994)); *Aguchak v. Montgomery Ward Co.,* 520 P.2d 1352, 1354 (Alaska 1974).

**16.** *See Kennecorp Mortgage & Equities, Inc. v. First Nat'l Bank of Fairbanks,* 685 P.2d 1232, 1236 (Alaska 1984) (citation omitted).

**17.** *See* AS 25.27.225.

a. *CSED had statutory authority to enter an order of child support against Jeffrey.*

CSED clearly had statutory authority to enter an order of child support against Jeffrey under AS 25.27.140(a). This statute provides:

> If no support order has been entered, the agency may establish paternity and a duty of support utilizing the procedures prescribed in AS 25.27.160–25.27.220 and may enforce a duty of support utilizing the procedure prescribed in AS 25.27.230–25.27.270. Action under this subsection may be undertaken upon application of an obligee, or at the agency's own discretion if the obligor is liable to the state under AS 25.27.120(a) or (b).

Accordingly, for Jeffrey to be entitled to relief, CSED must have acted in a manner inconsistent with due process.

b. *CSED violated Jeffrey's right to due process.*

■ Due process requires that CSED provide an alleged obligor with an opportunity for a fair and impartial hearing before finalizing and implementing a continuing child support order that will become a series of enforceable judgments.[18] Jeffrey did not receive a fair and impartial hearing.

■ CSED predetermined that Jeffrey was the "legal father" of T.W. when he was merely the legally presumed father.[19] The difference is significant. In the procedural context of a civil action, a legal presumption is a pre-investigatory allocation of evidentiary burdens;[20] a finding of fact is a post-investigatory conclusion based on the evidence presented.[21]

Jeffrey was the legally presumed father of T.W. based on the common law presumption that a husband is the father of any child born to his wife during the term of their marriage.[22] But once CSED took formal action to enforce this presumption by issuing an administrative child support order, Jeffrey was entitled to a formal opportunity to rebut the presumption before CSED's order became final. CSED, however, did not entertain Jeffrey's efforts to rebut the presumption and show that he was not in fact T.W.'s father. Nor did CSED engage in any fact finding. Because CSED did not have the power to administratively disestablish paternity at the time, it merely held that Jeffrey was the legal father of T.W. and directed Jeffrey to the courts for relief.

It might be argued that at most Jeffrey has established grounds for reversal on appeal but not for Civil Rule 60(b) relief.[23] Here, however, the mistaken conclusion that Jeffrey was T.W.'s "legal father" was used by CSED to deny him a meaningful hearing that could provide true relief in the procedural context of CSED's administrative action. His only recourse, as stated by CSED, was to seek relief by initiating a separate paternity action in the superior court. But that position denies due process to the presumed father: Arrears that accrue in the interim

---

**18.** We observed in *In re Hanson*, 532 P.2d 303 (Alaska 1975), that:

> In determining whether due process has been observed by an administrative agency of the State of Alaska, this court reviews the proceedings of the administrative body to assure that the trier of fact was an impartial tribunal, that no findings were made except on due notice and opportunity to be heard, that the procedure at the hearing was consistent with a fair trial, and that the hearing was conducted in such a way that there is an opportunity for a court to ascertain whether the applicable rules of law and procedure were observed.

*Id.* at 305 (internal indentation omitted) (quoting *K & L Distribs., Inc. v. Murkowski*, 486 P.2d 351, 357 (Alaska 1971)). As such, a failure on the part of CSED to provide Jeffrey with a fair and impartial hearing would violate Jeffrey's due process rights.

**19.** *See T.P.D. v. A.C.D.*, 981 P.2d 116, 119 (Alaska 1999) ("A child born to a married woman is presumed to be the offspring of her husband." (citation omitted)).

**20.** *See* Alaska R. Evid. 301(a).

**21.** *See Black's Law Dictionary* 646 (7th ed.1999) (defining "finding of fact").

**22.** *See T.P.D.*, 981 P.2d at 119 (citation omitted).

**23.** *See Morris v. Morris*, 908 P.2d 425, 429 (Alaska 1995) (noting that Civil Rule 60 is not a substitute for failing to file a timely appeal or a vehicle for relitigating issues that have been resolved by a prior judgment (quoting *Burrell v. Burrell*, 696 P.2d 157, 163 (Alaska 1984))).

between service of the NFFR and a court order disestablishing the paternity of the presumed father cannot be retroactively modified because they are final judgments. Thus, the legally presumed father is liable for the arrears and has no recourse. Such a procedure denies a fundamental aspect of due process, which is the right to be heard.[24]

### C. *Jeffery Is Entitled to Reimbursement of Child Support Amounts Collected and Retained by the State.*

■ CSED argues that the superior court improperly ordered the state to reimburse Jeffrey for funds involuntarily collected from him after Kurt Walker filed his complaint.[25] As both parties agree, our recent decision in *State, CSED v. Mitchell*[26] controls. In *Mitchell*, we held that to the extent that funds were collected and retained by the state, a court may properly order a refund, but that the court could not order a refund as to funds collected but passed through to another entity.[27] As to those funds, the disestablished father must instead collect directly from that other entity.[28] Thus, any funds collected from Jeffrey and retained by the state are subject to a refund order; but Jeffrey must bring a separate action to obtain those funds collected and passed through to either the federal government or to Krystal. Because the superior court's refund order did not distinguish between funds retained by the state and those passed through to another entity, we remand with directions that only funds retained by the state are subject to the refund order.

### IV. *CONCLUSION*

Jeffrey Maxwell was not accorded due process of law by CSED when it entered a child support order and established child support arrears against him. Therefore, the order of

support entered by CSED against him was void. As a matter of law, Jeffrey Maxwell is entitled to relief under Civil Rule 60(b)(4). Accordingly, we AFFIRM the superior court's order vacating the child support arrears. We REMAND the superior court's order concerning refund for further proceedings consistent with this opinion.

---

**24.** See *Keyes v. Humana Hosp. Alaska, Inc.,* 750 P.2d 343, 353 (Alaska 1988).

**25.** The parties dispute the proper effective date of the refund order. CSED argues that the date on which Jeffrey Maxwell moved to disestablish paternity (December 18, 1997) is the proper date. Maxwell argues that the date on which Kurt Walker moved to establish his own paternity (February 8, 1997) is the proper date. The superior court utilized the earlier date, reasoning that because a child may have only one father the

date of Kurt Walker's establishment of paternity must necessarily end Jeffrey Maxwell's obligation to provide support. The superior court did not err in this conclusion.

**26.** 930 P.2d 1284 (Alaska 1997).

**27.** See *id.* at 1289–90.

**28.** See *id.* at 1290.