STATE of Alaska, Appellant,

v.

SUPERIOR COURT, Appellee.

Larry A. Reed, Real Party in Interest.

No. A–7843.

Court of Appeals of Alaska.

Feb. 1, 2002.

W.H. Hawley, Jr., Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellant.

Michael P. Heiser, Ketchikan, for the real party in interest, Larry A. Reed.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

In late 1996, Steven Reed was charged with stalking and kidnapping his former girlfriend. Reed's father, Larry A. Reed, posted a $10,000 cash bond to secure his son's pre-trial release. This bond was both an "appearance" bond and a "performance" bond. That is, the money could be forfeited not only if Steven Reed failed to appear in court when required, but also if Steven failed to comply with the other conditions of his release.

In January 1997, Steven Reed violated the conditions of his release by leaving his father's immediate presence and by consuming alcohol. Based on these violations, the State asked the superior court to order forfeiture of the $10,000 posted by Larry A. Reed. In April, the court ordered forfeiture of $5000 (*i.e.*, one-half of the bond).

Approximately three years later, in *Lonis v. State*, 998 P.2d 441 (Alaska App.2000), this court ruled that the Alaska legislature had not authorized "performance" bonds. That is, we concluded that the legislature had authorized forfeiture of bail only for a defendant's failure to appear in court as required, and had not authorized forfeiture of bail for a defendant's non-compliance with the other conditions of release.[1]

Our decision in *Lonis* became final on July 18, 2000 (the day after the supreme court denied hearing).[2] Ten days later, on July 28th, Larry A. Reed filed a motion asking the superior court to refund the previously forfeited $5000. The superior court granted Reed's motion under the authority of Alaska Civil Rule 60(b)(4), which empowers the court to grant relief from a void judgement. The State now appeals.

The State first argues that Civil Rule 60(b) does not authorize relief in this case because the forfeiture of Reed's money occurred in a criminal prosecution. From this fact, the State concludes that the litigation over Reed's money is criminal in nature, not civil, and therefore the Civil Rules do not apply.

Litigation can not always be neatly categorized as either "criminal" or "civil". See, for example, *State v. Clayton*, 584 P.2d 1111 (Alaska 1978), in which the supreme court held that traffic infractions are "quasi-

---

1. *See id.* at 444–45.

2. *See Lonis v. State*, Supreme Court File No. 9634. *See also* Alaska Appellate Rules 507(b) and 512(a)(2)[b] which, in conjunction, state that a decision of this court becomes final on the day after the supreme court denies a petition for hearing.

criminal"—that is, non-criminal, but generally governed by the rules of criminal procedure. Although bail forfeiture litigation will almost always arise from criminal prosecutions, we conclude that bail forfeiture litigation is governed by the rules of civil procedure.

■ First, forfeiture of bail does not hinge on whether the defendant in the criminal case is ultimately found guilty or innocent. Rather, the sole question is whether the defendant complied with the conditions of their release. This issue is litigated under a "preponderance of the evidence" standard.[3] And the person whose money is at risk is entitled to litigate this issue in their own right, regardless of whether the defendant in the criminal case desires to oppose the forfeiture.[4]

■ Second, an order directing the forfeiture of bail is not treated as just another mid-litigation decision in the criminal prosecution. Instead, Criminal Rule 41 refers to the order as a "judgment", and the court's decision is deemed a final order for purposes of appeal. Criminal Rules 41(h)(3) and 41(i)(5) both state that when a court orders forfeiture of bail, "[a]n appeal may be taken from the judgment of forfeiture in the manner of other appeals". That is, the person who has suffered forfeiture of their money can appeal the forfeiture regardless of how or when the underlying criminal case ends, and the deadline for filing this appeal is calculated from the distribution date of the judgement of forfeiture. This makes sense because, with respect to the person whose money has been forfeited, the court's order resolves that person's rights and ends the litigation.

For these reasons, we conclude that bail forfeiture litigation is primarily civil in nature. It may be that, because the litigation arises in the context of a criminal prosecution, certain civil rules should not apply. However, we hold that Civil Rule 60(b) applies to bail forfeiture litigation, giving the trial court the authority to grant relief from judgements of forfeiture.

■ The State alternatively argues that even if Civil Rule 60(b) is applicable to bail forfeiture litigation, the superior court was mistaken in granting relief under subsection (b)(4) of that rule. Subsection (b)(4) authorizes a court to grant relief from a "void" judgement. The State argues that the judgement of forfeiture entered against Larry Reed was not "void" within the meaning of Rule 60(b).

■ Generally speaking, a judgement is "void" for purposes of Civil Rule 60(b)(4) "if the court that entered the judgment was without jurisdiction to act, or if that court acted in a manner inconsistent with due process of law." [5]

It would seem that this test is plainly met here. The superior court ordered forfeiture of Reed's money because Reed's son failed to comply with the conditions of his pre-trial release. In *Lonis*, we ruled that Alaska's bail statutes did not authorize this type of forfeiture. Thus, the superior court lacked jurisdiction to issue the judgement of forfeiture or, alternatively, Reed was denied due process when the court issued an order that exceeded its statutory powers.

The State argues, however, that the superior court had jurisdiction to issue the judgement of forfeiture. The State points out that, under AS 22.10.020(a), the superior court is vested with plenary jurisdiction in all criminal matters and, under AS 12.30.020(a), the court is given broad authority to fashion conditions of release in criminal cases.

■ What the State says is true, but it is beside the point. "Jurisdiction" is a term that performs yeoman service; it refers to many different legal concepts. This multiplicity of meanings can sometimes engender ambiguity or confusion. Here, the pertinent issue is not the superior court's authority to entertain criminal litigation, nor the court's authority to formulate and impose conditions governing a criminal defendant's release.

---

**3.** *See* Criminal Rules 41(h)(3) and 41(i)(5).

**4.** *See* Criminal Rules 41(h)(2)-(3) and 41(i)(3)-(4).

**5.** *State, Department of Revenue, Child Support Enforcement Div. v. Maxwell*, 6 P.3d 733, 736 (Alaska 2000).

Rather, the question is whether the superior court had the authority to order forfeiture of bail if a defendant failed to comply with the conditions of release (apart from the obligation to appear in court). In other words, the question is whether the superior court had subject-matter jurisdiction to grant the bail forfeiture that the State requested. Here, the term "subject-matter jurisdiction" refers to the court's "power to issue a decree [granting] the type of relief sought".[6]

▉▉▉▉ The State asked the superior court to issue a judgement directing forfeiture of Larry Reed's bail money based on the assertions that Reed's son violated the conditions of his release by consuming alcohol and by leaving Reed's immediate custody. But the question of the superior court's subject-matter jurisdiction does not turn on whether the State proved these particular assertions. Rather, "subject-matter jurisdiction" refers to the superior court's abstract authority to issue this kind of judgement.

We say "abstract authority" because we are not dealing with whether the court correctly determined the facts of Reed's case or correctly applied the rules of procedure when presiding over his particular bail forfeiture hearing. Instead, the issue is whether the court would be wrong to issue such a judgement no matter what evidence was presented. The superior court would lack subject-matter jurisdiction only if, regardless of the circumstances, the court had no authority to order forfeiture of bail based on proof that the defendant violated a condition of release apart from the obligation to appear in court.

That is the case here. In *Lonis*, we construed the bail statutes in effect at the time that this case was litigated in the superior court, and we concluded that the Alaska Legislature had not authorized courts to order forfeiture of bail for a defendant's violation of the conditions of release other than failure to appear. Thus, the superior court had no statutory authority to order forfeiture of Larry Reed's money even if the State proved its allegations.

The Alaska Supreme Court has held that relief is available under Civil Rule 60(b)(4) when a court or administrative agency acts beyond its statutory powers. For instance, in *Standifer v. State*, 3 P.3d 925 (Alaska 2000), the Alaska Supreme Court held that, following the discharge of a loan in bankruptcy, a state court is deprived of subject-matter jurisdiction to enforce a judgement arising from that loan—and thus the debtor could obtain relief from the court's order under Civil Rule 60(b)(4).[7] Similarly, in *State, Department of Revenue, Child Support Enforcement Div. v. Maxwell*, 6 P.3d 733 (Alaska 2000), the court indicated that a judgement for past-due child support would be void, and thus subject to attack under Civil Rule 60(b)(4), if the Child Support Enforcement Agency had lacked statutory authority to issue the original child support order.[8]

As the supreme court stated in *Dewey v. Dewey*, 969 P.2d 1154 (Alaska 1999),

> The question [is whether] the tribunal's excess of authority was plain or has seriously disturbed the distribution of governmental powers or has infringed a fundamental constitutional protection.

*Id.* at 1161 (quoting *Perry v. Newkirk*, 871 P.2d 1150, 1155 (Alaska 1994)).

Turning to the present case, the question is whether, under any possible evidence that the State might present, the superior court had the statutory authority to order forfeiture of bail for a defendant's violation of the conditions of release (other than the obligation to appear in court). Although the legislature has since granted this power to the superior court, the answer at the time this case was litigated was "no". We held in *Lonis* that the court had no statutory authority to forfeit a defendant's bail for this type of misconduct. The superior court therefore exceeded its statutory powers when it ordered forfeiture of Reed's money. Accordingly, the court's judgement was "void" for

---

**6.** *Black's Law Dictionary* (7th edition, 1999), pp. 855 & 857 (combining the definitions of "jurisdiction" and "subject-matter jurisdiction").

**7.** *See id.* at 928.

**8.** *See id.* at 736.

purposes of Civil Rule 60(b)(4), and Reed was entitled to seek relief under that rule.

■ The final question is whether, in addition to setting aside the judgement of forfeiture, the superior court could order the State to refund Reed's money. The answer is found in this court's decision in *State v. Stein*, 806 P.2d 346 (Alaska App.1991).

In *Stein*, the defendant was convicted of commercial fishing in closed waters. The State chose to prosecute Stein's case as a non-criminal "violation" under *Beran v. State*, 705 P.2d 1280 (Alaska App.1985). After Stein was convicted, the district court fined him $1000.[9] But the following year, in *Constantine v. State*, 739 P.2d 188, 190 (Alaska App.1987), this court ruled that the maximum fine for this type of violation was $300. Based on *Constantine*, Stein asked for a refund of the extra $700.

Legal authorities offer conflicting views on whether a refund is appropriate under such circumstances. But after reviewing these conflicting authorities, this court upheld Stein's refund:

> We have carefully reviewed cases cited by the parties dealing with the appropriateness of granting restitution in cases where citizens pay illegal fines. We are persuaded that Stein should receive restitution of the fine he paid in excess of $300. *See United States v. Lewis*, 342 F.Supp. 833 (E.D.La.1972), *aff'd*, 478 F.2d 835 (5th Cir. 1973); *Constantine*, 739 P.2d at 190. As the [federal district] court pointed out in *Lewis*:
>
>> The Fifth Amendment prohibition against the taking of one's property without due process of law demands no less than the full restitution of a fine that was levied pursuant to a conviction based on an unconstitutional law. Fairness and equity compel this result, and a citizen has the right to expect as much from his government, notwithstanding the fact that the government and the court were proceeding in good faith at the time of prosecution.
>
> 342 F.Supp. at 836.

In this case, Stein paid an illegal fine under a valid statute. There is no question that Stein's conviction was valid, and that the court could legally impose a fine. Nevertheless, the fine actually imposed exceeded the amount the legislature had permitted. We recognize that some courts have refused restitution under similar circumstances, in reliance on the rule that a payment voluntarily made pursuant to a mistake of law is not recoverable. *See, e.g., Prilliman v. City of Canon City*, 146 Colo. 159, 360 P.2d 812 (1961). We are satisfied that this rule should not be adopted in this jurisdiction. In our view, the principles of equity favor Stein and persuade us to affirm the [order granting him a refund].

*Stein*, 806 P.2d at 347.

We find that *Stein* is applicable to the present case as well. Here, the superior court took $5000 of Reed's money and gave it to the State of Alaska. We later ruled in *Lonis* that the court had no statutory authority to do this. As was true in *Stein*, the constitutional prohibition against the taking of property without due process of law demands no less than full restitution of the money taken from Reed without statutory authority. As we said in *Stein* (quoting the federal court in *Lewis* ), "Fairness and equity compel this result, and a citizen has the right to expect as much from his government, notwithstanding the fact that the government and the court were proceeding in good faith at the time".[10]

For these reasons, the superior court's order directing the State of Alaska to refund Larry Reed's money is AFFIRMED.

---

**9.** *See Stein*, 806 P.2d at 346.

**10.** *Stein*, 806 P.2d at 347 (quoting *Lewis*, 342 F.Supp. at 836).